## Duffy v. Hubler Rentals, Inc.

*John M. Yarema,* for plaintiff.

*John F. Oldt,* for defendant.

*Jackson M. Sigmon,* for additional defendant.

WILLIAMS, J., May 22, 1972.—This matter is before the court on plaintiff's motion to remove a compulsory nonsuit. Plaintiff, an employe of Bethlehem Steel Corporation's Pottstown Erection Division, was injured when the hydraulic tailgate of a truck owned by Hubler Rentals, Inc., and leased to Bethlehem fell and struck him. At trial, he sought to impose liability upon Hubler under theories of strict liability pursuant to section 402A of the Restatement of Torts, 2d, and common

law negligence. The former theory has been abandoned.

The law governing a motion of this type is well settled. In accordance therewith, we have considered all facts and inferences thereon in the light most favorable to plaintiff and accepted as true all evidence which tends to support his case, having given him the advantage of every reasonable inference arising from the evidence and have resolved all conflicts therein in his favor: Sloss v. Greenberger, 396 Pa. 353; Forry v. Gulf Oil Corp., 428 Pa. 334; Kirk v. Brentwood M. H. Inc., 191 Pa. Superior Ct. 488.

Considering the testimony in this light, it appears that in December 1966, Hubler leased to Bethlehem a new International Harvester stake body truck with an hydraulic tailgate. The lease was not offered in evidence but it is not disputed that Hubler was obligated to service the vehicle, make State inspections and "all repairs that were reported as being needed."

To establish the breach of this duty to repair, plaintiff and two other employes of Bethlehem, Hancharik and Tognoli, who operated the truck at various times prior to the accident were called as well as Robert O'Shall, maintenance supervisor of Hubler. O'Shall produced the various service orders for the truck between December 1966, and June 9, 1969, the date of plaintiff's accident. They indicate that in 1967 Hubler made four service calls relating to the tailgate with the service orders noting, "Repair tail gate don't close"; "Repair tailgate latch; Repair leak at tailgate"; "Repair tailgate (shim out support arms)" and "Check h/gate; fill tank with oil for lift gate." There was no evidence that any of these service calls related to a sudden or uncontrolled falling of the tailgate.

Hancharik testified that in February 1968 the gate fell from an upright position to that parallel with the

bed of the truck. Defendant's work order dated February 20, 1968, indicates "Repair tailgate." It also indicates that two cotter pins were inserted in the control handle at that time. Between one and three weeks later, the gate fell to the ground and the operator could not raise it. Hubler's work order dated March 5, 1968, contains the notation, "Check lift gate weld." Approximately one month later, Hancharik testified that the tailgate again fell from an upright to a parallel position and Hubler's work order dated March 14, 1968, states, "Service call to repair lift gate." The details of the services performed on each of these occasions were not indicated. O'Shall stated that, while none of the service orders specifically referred to a problem with the tailgate falling down, this does not mean that the problem was not reported to Hubler in February and March 1968. Hancharik testified that thereafter he drove the truck until the mid-summer of 1968 without further difficulty with the tailgate.

Between the summer of 1968 and January 1969 there is no indication of any malfunction with the tailgate or that Hubler was advised of any problem except for a work order dated December 10, 1968, which indicated "Tail gate doesn't go down all the way." O'Shall testified that this was ordinary maintenance and was remedied by a correction to the adjustment nut on the hydraulic cylinder.

Tognoli testified that he operated the truck between January and May 1969 and that the gate fell on three or four occasions in February and March. Although the incidents were reported to his supervisors at Bethlehem, there is no evidence that Hubler was advised of any of them.

Plaintiff was assigned to the truck in late May 1969 and testified that he knew there had been trouble with the lift gate falling, although he used it without diffi-

culty until June 9, 1969. At that time he was in the process of closing the gate, stopped to talk to a fellow employee, and in doing so walked in back of the truck when the tailgate fell, striking plaintiff on the left knee and causing substantial injuries.

Hubler's maintenance supervisor testified that the vehicle was serviced at approximately 4,000-mile intervals. This service included lubricating the tailgate fittings and checking the hydraulic oil cylinder. No irregularity was discovered in the course of this servicing nor in a load test made after the tailgate safety latch was welded on March 5, 1968.

There was no evidence or expert testimony indicating the cause of the failure in the tailgate. The truck was taken off lease and returned to Hubler in July 1969, and subsequently sold. The record does not indicate that Hubler was advised of plaintiff's injury at any time prior to suit.

Plaintiff contends that the foregoing evidence established a prima facie sufficient to go to the jury. The test to determine whether plaintiff has met his burden of proof as to negligence was set forth in the leading case of Lear v. Shirk's Motor Express Corp., 397 Pa. 144, 152, as follows:

"A plaintiff is entitled to have his case considered by the jury even though he does not show that the only reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not *exclude* an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident." (Emphasis in original.)

In Pastuszek v. Murphy Plywood Corp., 219 Pa. Superior Ct. 59, the court, relying on Lear, stated:

"In order to show a prima facie case, it is not necessary to prove that the facts alleged are exclusively in favor of negligence but only that negligence is a possible inference": Id., at page 62.

We concur in plaintiff's argument here that defendant Hubler's duty to properly repair the truck extended to him and that it is liable if a breach of that duty was the proximate cause of his injuries. The question is whether plaintiff's evidence permits an inference that Hubler negligently breached its duty to repair.

Plaintiff argues that the jury should have been permitted to infer that Hubler negligently repaired the tailgate or improperly inspected it to determine the cause of the malfunction in February and March of 1968 because it fell again in June 1969. We disagree.

In the absence of any evidence as to the cause of the malfunction either in 1968 or 1969 or evidence of notice to Hubler that the repairs in February 1968, were ineffective combined with the positive evidence in plaintiff's case that the tailgate, in fact, functioned properly after the repairs in 1968 and that Hubler was not notified of the malfunction in February 1969, a jury verdict imposing liability upon Hubler could be based upon nothing but speculation or conjecture: Smith v. Bell Telephone Co. of Pa., 397 Pa. 134. Such a holding would have impermissibly made defendant an insurer or guarantor of the soundness of the equipment. Restatement of Torts, 2d, sec. 388, cited in Thomas v. Ribble, 404 Pa. 296. Here, as in Thomas, plaintiff has failed to sustain his burden of proving either that defendant knew or should have known that the equipment was in a dangerous condition or that

the inspection and repair of the unit in 1968 was inadequate.

Griffith v. Clearfield Truck Rentals, Inc., 427 Pa. 30, relied upon by plaintiff, is inapposite. There, defendant leased a tractor trailer to plaintiff's employer under an agreement to furnish and maintain the vehicle in good repair and running condition. Plaintiff picked up the truck at defendant's garage and returned it there after weekly trips of approximately 2,500 miles. On June 6, 1962, plaintiff informed one of defendant's garage mechanics of a problem with the steering mechanism. Two days later he placed a written notice of the problem on defendant's bulletin board. He again made the weekly run, experiencing no difficulty. On June 17th, at the beginning of the next trip and some 40 miles from the garage, the steering mechanism locked and an accident occurred. Plaintiff's expert testified that the locking was caused by a failure in the truck's rear universal joint. The Supreme Court sustained a jury verdict in plaintiff's favor, holding that defendant had been notified a few days prior to the accident of some trouble with the steering apparatus and that it had a duty to make a reasonable inspection and examination to determine the cause of the trouble. Since defendant received notice, but made no inspection, and plaintiff's expert testified as to the cause of the steering apparatus locking, the question of liability was properly left to the jury to determine whether defendant had made the necessary repairs or if the defect could have been discovered by reasonable examination.

Here, Hubler's duty was to make all repairs to the truck "that were reported as needed." The tailgate was repaired by defendant in February and March 1968. There was positive testimony that thereafter the tailgate functioned properly until February 1969. Defend-

ant received no notice of difficulty with the tailgate or the need for any repairs from February 1968 until after plaintiff's accident in June, 1969. A jury, thus, could not reasonably infer that Hubler had breached its duty of repair.

### ORDER OF THE COURT EN BANC

And now, May 22, 1972, plaintiff's motion to remove a compulsory nonsuit is denied and dismissed.