Griffith *v.* Clearfield Truck Rentals, Inc.,
Appellant.

Argued March 21, 1967. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument
refused October 26, 1967.

*Robert S. Grigsby,* with him *Giles J. Gaca, James
Jack,* and *Pringle, Bredin, Thomson, Rhodes & Grigs-
by,* for appellant.

*Edward L. Edelstein,* with him *Joseph L. Ehren-
reich, William G. Klenk, II, Donald M. Miller,* and
*Ehrenreich, Sidkoff, Edelstein & Shusterman,* and *Mil-
ler & Cope,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 26,
1967:

This action of trespass was brought by plaintiff-
appellee to recover damages for bodily injuries suffered
when a tractor trailer which he was operating left the

roadway. Plaintiff-appellee contended that a locking of the steering caused the tractor trailer to leave the roadway, and that this locking was caused by defendant-appellant's negligence in maintaining the tractor. The case was tried before a judge and jury, which returned a verdict in favor of plaintiff-appellee in the sum of $136,520.47. Defendant-appellant filed motions for judgment n.o.v., or in the alternative, for a new trial. The court below refused both motions in an opinion dated January 9, 1967, and this appeal followed the entry of judgment on the verdict.

At the time of the accident, appellee, a resident of Homer City, Pennsylvania, was employed by the Hartford Provision Company, Inc., of Stamford, Connecticut, as a truck driver, having been so employed since 1960. Hartford, about two years prior to the accident, entered into a lease agreement with the appellant for the use of its tractor trailers, one of which was driven by appellee. Under the terms of the lease between the appellant and Hartford, appellant agreed in writing, inter alia, to furnish and maintain the motor vehicles in good repair and running condition. The particular truck assigned to appellee was a 1959 Mack tractor which, at the time of the accident, had been driven some 480,000 miles. Appellee, in the course of his duties for Hartford, would pick up the truck at appellant's garage at Clearfield, Pennsylvania, would then proceed with the empty vehicle to Sioux City, Iowa, where he would obtain a load of beef and take it to Stamford, Connecticut, and would then return the tractor trailer to the garage of appellant at Clearfield, Pennsylvania. This trip was approximately 2500 miles and was driven by appellee weekly for over a year prior to the accident.

In March of 1962, appellee noticed definite vibrations in the steering column and that the truck at times wandered on the road. Appellee again noticed

a similar condition on June 6 and 7 in 1962, and a report of the trouble with the vehicle was given to appellee's employer. Appellee also testified that he had told one of the employee's of defendant company about his troubles with the steering. The record is devoid of any evidence that the appellant had paid any particular notice to the notations given of the trouble with the steering, or that any attempt was made to remedy the trouble. On June 8, 1962, appellee again reported the problem he was having by placing notice of it on a piece of paper and posting the paper on the bulletin board in appellant's garage. After this notice had been given to appellant, appellee again made the normal 2500 mile run with the tractor in question, experiencing no difficulty with the steering throughout the run, and so indicated on the report he made to his employer. On June 17, 1962, at approximately 5:15 P.M., appellee left appellant's garage in Clearfield with the empty tractor trailer. He was en route from Clearfield to his home in Homer City, prior to making the trip to Sioux City, Iowa, when the accident occurred on Route 296, north of Commodore, at approximately 6 P.M. At a point some 40 miles from the Clearfield garage, and approximately 200 yards before reaching a left-hand curve in the road, appellee once again experienced noise and vibration in the steering wheel and the truck began to wander. He removed his foot from the accelerator, as from experience on prior occasions, he had learned that this gradual slowing was a corrective measure in which the noise and vibrations and wandering of the truck ceased. At the time he first felt this vibration, he was traveling at approximately 40 miles per hour, and after taking his foot from the accelerator, the truck slowed down to approximately 35 miles per hour. As he reached the left-hand curve in the road, he felt his steering apparatus lock, and as a result of his inability to turn the wheel,

the truck went off the right-hand side of the road, struck something, came back across the highway and went down over an embankment and came to rest. As a result of this accident, appellee sustained serious bodily injuries and was in a semi-conscious state for some time.

Shortly following the accident, the tractor was completely disassembled by appellant. As the result of this disassembling, none of the expert witnesses who testified for either side viewed either the tractor or the alleged defective parts.

At the trial, Mr. Isaac Stewart, a consulting engineer testifying as an expert for appellee, expressed his opinion that the only condition which could cause noise, vibration, wandering, and locking of the steering wheel, was defective maintenance of the wheel balance, tire pressure, and/or tie rods in the suspension mechanism of the steering, which causes vibrations, which in turn was transmitted through the linkages to the rear steering universal joint. He was also of the opinion that the vibrations caused something to break in the universal joint, but was unable to say exactly which of the several parts in the universal joint it was. Mr. Stewart, on cross-examination, also admitted that the failure of the steering apparatus could have resulted from a latent metal defect, and as he had not seen the broken pieces, he was unable to state whether the defect could have been discovered upon reasonable inspection on the part of the appellant. The trial judge noted in his opinion that throughout the cross-examination, Mr. Stewart did not waiver in his opinion that the locking of the steering was caused by the failure in the rear universal joint. The trial judge found that the expert witness did definitely testify as to the cause of the locking of the steering apparatus, and that this was the only testimony offered by appellee as to what caused the steering apparatus to lock, in addition, of

course, to appellee's own testimony. The trial judge further noted that it was his belief that this was a question for the jury to resolve as to whether the expert (Mr. Stewart) "knew what he was talking about".

The appellant contends that judgment n.o.v. should be entered on its behalf, as there was no evidence that appellee's accident was caused by a defect ascertainable upon reasonable inspection, nor was there any evidence that appellant negligently repaired the vehicle. Appellant further contends that the truck driver was contributorily negligent in his failure to apply the brakes to stop the vehicle, thus avoiding the accident. In its new trial motion, appellant contends the trial judge erroneously admitted evidence of prior steering problems when there was no evidence to relate those problems to the accident; that appellee's expert was allowed to give an opinion which failed to meet the required standard, that is, the opinion was based upon assumed facts not of record and which facts were basically irrelevant. Appellant further contends the jury's verdict to be contrary to law and against the weight of the evidence; that the trial judge erroneously read appellee's point for charge No. 6 and omitted their point No. 4 and thus that he failed to instruct the jury properly regarding appellee's admission; that he misled the jury as to the regulation of the Interstate Commerce Commission; and lastly, that he neglected to instruct the jury in a proper manner of appraising and considering circumstantial evidence.

In *Connolly v. Phila. Trans. Co.*, 420 Pa. 280, 216 A. 2d 60 (1966), we said: "In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner. [citing cases], and in reviewing on appeal, we stated in Vignoli v. Standard M. Freight, Inc., 418 Pa. 214, 210 A. 2d 271 (1965): 'The grant or refusal of a new trial will not

be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case.' "

In the instant case, there was a contract between the defendant and the Hartford Provision Co., Inc. The court, in its opinion, states that the terms of this contract were read into the evidence, and that the court informed the jury that "The defendant was not a guarantor of the fact that the equipment was sound, but that they had an obligation to maintain the equipment and that if they were negligent in the maintenance of the equipment and because of their negligence this was the proximate cause of the accident then they were liable." See *Trusty v. Patterson*, 299 Pa. 469, 472, 149 A. 717 (1930). Nor was there any agreement, either express or implied, requiring the bailee to make repairs.

Using our case of *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A. 2d 573 (1961), for authority, the court below stated that: "In view of the contract the defendant owed a tort duty to plaintiff and was liable to him for the injuries received resulting from a *discoverable* defect in the elevator." (Emphasis in original) In the instant case, the court did not know whether the defect in the steering was discoverable. The court did believe, however, that the appellant had been notified of some trouble with the steering apparatus, and that it had a duty to make a reasonable inspection and examination to determine the cause of the trouble. The court went on to say: "We further believe that failure on the part of the defendant to make this inspection could be considered as negligence on the part of the defendant. If the defendant had made an inspection of the vehicle and would show that any defect in the steering apparatus was not ascertainable upon reasonable inspection, then defendant would not be liable." The court went on to say that there was no evidence

to indicate that appellant's inspection procedures were inadequate or that the alleged defect could have been discovered upon or by a reasonable inspection. The court found, however, that it was also true that there was no evidence that the defendant made any inspection to try to discover or determine if there was an alleged defect with the steering apparatus. The court further stated that appellee's expert witness "did testify definitely as to the cause of the steering apparatus locking", and that it was a question for the jury to determine the validity of the expert's testimony. The court further advised the jury that the fact that appellee drove the rig 2500 miles without incident after reporting the trouble, prior to the accident, was evidence for the jury to consider in determining whether the appellant had made the necessary repairs or if the defect could have been discovered by reasonable examination.

Our study of the record reveals that on cross-examination, Ronald Johnson, an employee of appellant at the time of the accident and for some 4 years prior to the accident, testified that he was in charge of regular weekly maintenance of tractor No. 130 (the tractor involved in the accident). Mr. Johnson stated that they would road test a vehicle for a steering difficulty; that they had a pattern for testing set up about 8 miles long, and that it would take approximately 1½ hours to do this. He pertinently testified as follows: "Q. Now, the mechanics in the shop, did they put in time slips for work done? A. No. Q. Was the amount of time spent on checking or repairing the tractor noted anywhere? A. Whenever a mechanic was done with a piece of equipment, I gave his time to the parts man. Q. Mark it on a slip? A. Work Order. Q. Work Order? A. Correct. Q. That would be a Work Order on work, whether or not work was done, I mean repairs; as long as time was spent, there would be a Work Or-

der made up, wouldn't there? A. Correct. Q. The Work Order would show that the steering was repaired, wouldn't it? A. Correct. Q. Nothing on the Work Order about steering, you would say no repair of steering? A. No, sir, I won't. Q. You mean they wouldn't put time in? A. Every time the steering is lubed. Q. I am talking of a specific complaint. If a man had a complaint about steering, and put the complaint on the bulletin board, you would take it and road-test it? A. Correct. Q. Take about an hour and a half? A. Correct. Q. You put a slip in for time? A. Should be. Q. Should be on the Work Order? A. Should be. Q. If it wasn't on the Work Order, you would say it wasn't done? A. No, I wouldn't." In the light of this testimony, it was for the jury to determine whether appellant had taken the necessary steps to correct the steering difficulty.

We said in *Smith v. Bell Tele. Co. of Pa.,* 397 Pa. 134, 136, 153 A. 2d 477 (1959) : "A variety of formulae for determining the sufficiency of circumstantial evidence to sustain a verdict may be found, including: 'such as to satisfy reasonable and well balanced minds.' [citing cases]. '[the facts and inferences] must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well supported belief in any inconsistent proposition' [citing cases]. Although some of the formulations appear to be mutually inconsistent, they have sometimes been used together. [citing a case]. The formula that 'the circumstances must be so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances' is not a correct statement of the rule to be applied by the judge on deciding a motion for either a nonsuit or binding instructions. If that were the rule what would be the province of the jury? In no case where there was more than one reasonable infer-

ence would the jury be permitted to decide. Insofar as this rule is stated in our cases it is disapproved. [footnote omitted] We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based. [citing cases] Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached. It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal'. True enough the trial judge has to do something like this in deciding a motion for new trial based on the weight of the evidence but no such rule governs him in deciding whether a case is submissible to the jury. The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks. The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way. A substantial part of the

right to trial by jury is taken away when judges withdraw close cases from the jury. Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith. This rule has been applied in substance in many cases. [citing cases]." (Emphasis in original)

Appellant further contends that the truck driver was contributorily negligent in his failure to apply the brakes to stop the vehicle, thus avoiding the accident. The court below found, and from our study of the record we must concur, that there was some evidence that the plaintiff, in speaking of what caused the accident, stated "He lost it". Appellant also showed that appellee drove the rig off the right-hand side of the road and, for some unexplained reason, it went across the road over to the left-hand side of the road. Appellant further contends that appellee, after discovering the steering malfunction, drove the vehicle for some 200 yards without ever attempting to apply the brakes. The court below found that all of these points were facts which the jury had a right to consider, and appellant had a right to argue as to appellee's being contributorily negligent; however, that "The finding of a jury, however, answers the contention of defendant in the negative, and this court cannot find the evidence was such that the court could declare plaintiff to be guilty of contributory negligence as a matter of law." We agree with this conclusion as reached by the court below. The record also discloses testimony that the driver of the vehicle, when experiencing difficulty with the steering in the past, had found that slowing down

by removing his foot from the accelerator would cause the steering vibration to cease, and certainly the jury could have considered that appellee was attempting to apply this remedy as a corrective measure, as he had done in the past. Moreover, as we recently said in *Parker v. Jones*, 423 Pa. 15, 19, 223 A. 2d 229 (1966): "We recognize and adhere to the rule that contributory negligence should not be declared as a matter of law save where such negligence is so clearly revealed that fair and reasonable individuals cannot disagree as to its existence: Sweigert v. Mazer, 410 Pa. 71, 188 A. 2d 472." We find that this was not a clear case, and as properly concluded by the court below, reasonable men could differ as to the conclusion that appellee was guilty of contributory negligence.

Appellant further contends that the trial court allowed appellee's expert witness to give an opinion based upon assumed facts not in the record. Appellee's expert witness was a consulting engineer who had not been able to view the vehicle after the accident, as shortly following the accident, the tractor was completely disassembled by appellant. As we said in *Moodie v. Westinghouse Elec. Corp.*, 367 Pa. 493, 501, 80 A. 2d 734 (1951): "If a witness 'has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: [citing cases] "The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily obtainable in such cases": [citing a case] Whether the knowledge of the witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion. . . .': McCullough v. Holland Furnace Co., 293 Pa. 45, 49."

Our examination of the record discloses that Mr. Isaac Stewart had been a consultant in matters in-

volving accidents of trucks of various makes and manufacturers, and certainly, on the basis of the record, Mr. Stewart had qualifications to establish him as an expert, and there was no abuse of discretion by the trial court in allowing him to testify as such. The court further stated in its opinion, as we have previously mentioned, that the expert witness did definitely testify as to the cause of the steering apparatus locking. On the basis of the record, and the testimony of the expert, Mr. Stewart, who, according to the trial court, did not waiver in expressing his opinion that the locking of the steering wheel was caused by the failure of the rear universal joint, we must conclude that the trial court did not abuse its discretion in either allowing him to testify or as to the scope of his statement.

Appellant further contends that the trial court committed error in allowing the testimony of Ralph Lobstein and appellee as to the steering problems on June 6th and 7th, 1962. Appellant contends that there was no credible evidence that the noise, vibrations and wandering of June 6th and 7th had any connection with the accident or the alleged failure of the rear universal joint, as there was nothing to show that the condition of the steering mechanism was the same on June 6th and 7th, 1962, as it was on June 17th, 1962, the date of the accident.

Mr. Lobstein was the secretary-treasurer of Hartford Provision Company, Inc., appellee's employer. Mr. Lobstein kept a record, in his position with the company, of the drivers' daily vehicle condition reports, said reports covering a driver's trip, in the instant case, 5 days. He testified that the driver had to turn these forms in to be paid, and that on the day of June 6th, opposite "steering", there was an "x", indicative of some problem with the steering. Appellant contends that at that time, appellee reported that he would sub-

sequently prove that the trouble which caused the accident was, in fact, the same trouble which existed on June 6th and 7th, and that appellee failed to relate this to the accident.

Although Mr. Stewart, appellee's expert witness, stated that this noise, vibration and wandering could have been caused by wheel alignment, looseness in the tie rod ends, lack of balance in front tires, tire pressure, speed, and/or road conditions, the trial judge was of the opinion that the expert witness did sufficiently tie this in to the accident. It should also be noted that Mr. Stewart was unable to examine the vehicle after the accident, as it was under the complete control of the appellant at that time, and was subsequently dismantled.

Appellant further contends that the court erred in granting appellee's point No. 6 in his charge to the jury. That point reads as follows: "If you find that defendant failed to use due care in repairing or replacing the steering assembly after being notified of its defective condition and that the accident happened from the defective steering mechanism, you should find defendant negligent in supplying an unsafe vehicle for plaintiff's use." We agree with the trial judge that this was a correct statement of the law, and believe that our case of *Trusty v. Patterson,* 299 Pa. 469, 149 A. 717 (1930), more than substantiates this conclusion. Appellant further contends that the trial judge erred in not reading its point for charge No. 4, which reads as follows: "4. Statements made by a party are admissible as substantive evidence of the facts contained therein; in other words, if the testimony of the witnesses concerning the statements of the plaintiff as to the manner in which the accident happened is found by you to be credible and believable, you would then be justified in finding that the accident happened as the plaintiff had described to those wit-

nesses." We find this contention to be without merit also. The trial judge, in his charge to the jury, mentioned the fact that one witness testified that appellee stated "He lost it" when speaking of the vehicle. Furthermore, the jury had an opportunity to hear Trooper Louis J. Torta testify as to what appellee told him when he came upon the scene of the accident, and we find that the trial judge's failure to read this point was not such as to constitute reversible error.

Appellant further contends that the trial judge failed to instruct the jury as to the proper method of evaluating circumstantial evidence. The court, in its opinion, states that there was no request by the appellant, or anyone else, to instruct the jury in regard to circumstantial evidence, and further, correctly stated: "In this particular case where direct evidence stops and circumstantial evidence begins, is rather difficult to determine. The plaintiff's case, we believe, could well be stated to stand completely upon direct evidence. In other words, the plaintiff contends that there was something wrong with the steering apparatus. This matter was reported to the defendant. There is no evidence that it was corrected or that any attempt was made to determine what was the cause of the trouble with the steering apparatus. The plaintiff further contends that a failure of the steering apparatus caused the injuries to the plaintiff. It is further the contention of the plaintiff that having shown that there was something wrong with the steering apparatus and that the defendant failing to make any effort to correct the wrong, was guilty of negligence when the steering apparatus did lock."

We have carefully examined all of appellant's allegations of error and conclude that the trial of the case was free from any error of law or abuse of discretion which controlled its outcome. We further conclude that, viewing the evidence in the light most fa-

vorable to the verdict winner, the record sustains the verdict.

Judgment affirmed.