Fady et ux., Appellants, *v.* Danielson Construction Company.

*Irving M. Green,* with him *Louis H. Ceraso,* for appellants.

*Joseph A. Hudock,* with him *Pershing, Hudock & Driscoll,* for appellee.

OPINION BY SPAULDING, J., March 27, 1973:

William E. Fady, Jr. and Emma B. Fady, his wife, appeal from an order of a court en banc of the Court of Common Pleas of Westmoreland County refusing to remove a compulsory nonsuit in their action against appellees.

Appellants brought this suit against appellee Danielson Construction Company for blasting damage to a commercial building housing their furniture business and to their adjacent dwelling house. Danielson joined appellees Hodge Construction Company and Bisch Industries, Inc., as additional defendants. The action was tried before Judge Richard E. McCORMICK and a jury. Appellants presented their case, which consisted solely of appellant William Fady's testimony and the testimony of George Ed, a contractor, who afforded evidence on the issue of damages and the cost of repairs. Prior to his testifying, no objection was made to Ed's qualifications. When, however, cross-examination revealed several errors in his calculations and repair estimate, the trial court granted appellees' motion that Ed's testimony be stricken in its entirety. Additionally, on its own motion, the court struck the contractor's written proposal, which was a detailed enumeration of the damage to be repaired and the specific charge for each portion of the proposed work. After Ed's testimony, the only evidence as to damages, was stricken, the trial court granted appellees' motion for compulsory nonsuit. On January 19, 1972, the court en banc affirmed this action, citing *Krasowski v. White Star Lines,* 307 Pa. 470, 162 A. 200 (1932), as requiring proof of damages to sustain a verdict. Appellants here challenge the striking of Ed's testimony.

"On this review we adhere to the rule that on an appeal from a refusal to take off a compulsory nonsuit we must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the plaintiffs (appellants) : Auel v. White, 389 Pa. 208, 210, 132 A. 2d 350; Layman v. Gearhart, 389 Pa. 187, 190, 191, 132 A. 2d 228; Seng v. American Stores Co., 384 Pa. 338 121 A. 2d 123; Finnin v. Neubert, 378 Pa. 40, 41, 42, 105 A. 2d 77." *Lopez v. Gukenback,* 391 Pa. 359, 361, 137 A. 2d 771 (1958). Accord, *Taylor v. Phila. Parking Authority,* 398 Pa. 9, 156 A. 2d 525 (1959).

The crux of this case is whether one major error in Ed's calculations as to the repairs necessary and other inconsistencies and vagueness in several less vital areas of his testimony were so substantial as to justify the court en banc's conclusion that : "His testimony was not qualified, incompetent, confused and almost fraudulent, and was entirely meaningless to the jury." While Ed's testimony was far from overwhelming, after a careful review in the light most favorable to appellants, we hold that it was qualified, despite errors and inconsistencies, and should have been submitted to the jury for their judgment as to its credibility and persuasiveness.

Initially, it is necessary to reiterate that Ed was not called for the more usual purpose of an expert testifying to the causal connection between negligence and damages.[1] Appellants relied solely on appellant William

---

[1] This case is therefore distinguishable from those cases mandating that an expert may not testify that damages might have been or even probably were *caused* by alleged negligence, but that he testify that in his professional opinion the result in question came from the alleged cause. See *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 386, 278 A. 2d 908 (1971) and cases cited therein. Here the expert testimony is to amount of damages rather than their cause.

Fady's testimony in this regard. Rather, as stated in appellants' offer of proof when Ed was called, his testimony was offered as "a contractor [who made] estimates of repairs to the damages that have already been testified to . . ., and who has submitted a proposal to Mr. Fady for the repair of these damages . . .; and also that he had been on the premises prior to the time of the blasting. . . ." (R. 102a) Appellees made no objection to Ed's qualifications prior to his testifying, but made such an objection, at side bar, only after the witness was dismissed. Ed's testimony opened with his stating that he was a contractor and carpenter, had once been involved in heavy construction, and for the last 20 years had been engaged in remodeling homes and commercial buildings. Thus, prior to his testifying, he appeared to be qualified.

The error on which both appellees and the lower court primarily rely as refuting Ed's qualifications involves the computation of the number of concrete blocks necessary to repair damage to part of appellants' property. On direct examination, the witness indicated, in accordance with his written estimate, that 13,140 ten-inch blocks would have to be replaced in repairing this damage. That figure was multiplied by the cost per block to determine the total cost of this item in the repair estimate and then, as with all other items to be repaired, was multiplied by 20% to allow for contingencies. The total then multiplied by 25% to allow for profit and overhead. On cross-examination, Ed indicated that his estimate was in error as to the number of blocks needed for the repairs: "Q. And if I'm right then, your estimate of thirteen thousand, one hundred and forty blocks is incorrect? A. That's very possible. Q. That's correct, isn't it? A. If I made a mistake, it's correct, yes. Q. If you need one and a half blocks for each square foot of space, and you have five thousand, eight hundred forty square feet to tile, you would need

(and I'll add it up here) approximately eight thousand, seven hundred and sixty blocks which is substantially less than the thirteen thousand odd blocks, you testified to. A. That's correct.

. . .

"A. It was just a simple error of instead of a block and a half per square foot we used two and a quarter. It was a wrong measure of square footage.

. . .

"Q. —How many blocks are you actually going to use on this wall? Replacing this wall? A. It figures out that it will be five thousand less. We had a figure of . . . We had a figure of thirteen thousand, one hundred and forty blocks, and it actually breaks down that . . . to round it out it's less than five thousand. Less than five thousand from that figure. So we'll be dealing with five thousand less than thirteen thousand." (R. 163a-166a)

Based on the above miscalculation, the appellees argued in support of their motion to strike Ed's testimony. After argument, the court ruled that Ed's testimony was incompetent, the following colloquy taking place: "BY THE COURT: That one error alone I might just parenthetically add just throws out the whole testimony. BY MR. GREEN: Why? BY THE COURT: Why? Because it's wrong, and his twenty percent figure is based on that; twenty-five percent figure is based on . . . BY MR. GREEN: The jury can figure that out. He admitted he made a mathematical error. BY THE COURT: It makes the whole thing error. Do you want the jury to figure from that kind of testimony what the damages in this case are?" (R. 183a) While we agree with the court below that the accuracy and credibility of Ed's estimate was questionable, especially since the error in his original miscalculation was magnified by the 20% and 25% factors for contingencies and profit, we do not agree that there was so little of his testimony re-

maining which might be found credible to justify precluding his testimony in its entirety as unqualified.

After his corrections on cross-examination, Ed's testimony was sufficiently clear on the issue of damages to go to the jury. There were over 60 specific items in ten different categories contained in Ed's written estimate, other than the aforementioned concrete blocks. While some of these items were brought into question during cross-examination, most were supported by an explanation which a reasonable juror could conclude justified them as appropriate dollar amounts for repair of damages, which appellant William Fady had testified were caused by appellees. The court en banc's conclusion that Ed's testimony "was not qualified, incompetent, confused, and almost fraudulent. . . ." was apparently based in large part on the *size,* in dollars, of the one mathematical mistake regarding the concrete blocks, rather than by the *number* of errors in his testimony. This single error, however, goes only to the issue of credibility, once it has been corrected. This case "could properly have been submitted to the jury under Pennsylvania law, which holds that it is [only] fatal to a plaintiff's case if there are absolute contradictions in the *ultimate* conclusions reached by plaintiff's experts on a key issue. Mudano v. Phila. Rapid Transit Co., 289 Pa. 51, 137 A. 104 (1927); Menarde v. Phila. Transportation Co., 376 Pa. 497, 501, 103 A. 2d 681 (1954)." (Emphasis added.) *Denneny v. Siegel,* 276 F. Supp. 281, 284 (E.D. Pa. 1967). Ed's contradictions here were not on such an ultimate conclusion. He had spelled out the work necessary in repairing the damages and his mathematical error could have been corrected by the jury in rendering their verdict had they believed the other testimony and found for appellants.

As our Supreme Court stated in *Moodie v. Westinghouse Elec. Corp.,* 367 Pa. 493, 501, 80 A. 2d 734 (1951):

"If a witness 'has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given his evidence is for the jury: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Stocker v. Schneider, 228 Pa. 149. "The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily obtainable in such cases": White v. R.R. Co., 222 Pa. 534, 537.' " Cited with approval in *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A. 2d 896 (1967) ; see *Reardon v. Meehan*, 424 Pa. 460, 464, 227 A. 2d 667 (1967). An examination of Ed's testimony reveals him to have been sufficiently qualified to testify as to damages.

The trial court's decision with respect to the expert testimony in the instant case may be analogized to similar considerations of expert testimony as to valuation in condemnation cases. In such a case, the Pennsylvania Supreme Court noted that: " 'The *credibility* of the oral testimony, which was concerned with the fair market value of the property, was peculiarly for the jury to appraise and not for the court. . . . It was the province of the jury to weigh the credibility of the valuation witnesses' testimony and to determine what the land taken was fairly worth at the time of the condemnation.' [Springer v. Allegheny County, 401 Pa. 557, 165 A. 2d 383 (1960)]. . . . When the court below in this case, as did the court below in Springer, took upon itself the determination of the witnesses' credibility it went beyond its judicial function. . . ." *McConn v. Commonwealth, Dept. of Hwys.*, 431 Pa. 574, 578-79, 246 A. 2d 677 (1968). Likewise, here, while preliminary inquiry as to whether Ed's qualifications justified the admission of his testimony was largely a question within the trial court's discretion, *Moodie, supra,* at 501, once he was found qualified, the later striking of his

testimony because of errors which went only to credibility violated the province of the jury.

The order of the court below is reversed, the compulsory nonsuit is removed, and the case is remanded for trial.

WATKINS, J., dissents.