Commonwealth *v.* Washington, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Arthur L. Gutkin,* and *Berkowitz and Gutkin,* for appellant.

*Eric Henson, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., June 24, 1975:

The instant case arises on direct appeal following the conviction, after jury trial, of the appellant, Jacob P. Washington, on two charges of assault and battery with intent to murder. The victims of the assaults were the wife of the appellant and a female friend of the wife. It was not disputed that appellant participated in a vicious knife assault on both women; his main claim on appeal is that he should have been found "temporarily insane" at the time of the assaults, and thus not guilty of the crimes charged.

The record shows that on February 15, 1973, the wife of the appellant was separated from him and was living with the couple's two small children at the Phila-

delphia residence of the wife's mother. On that morning, the wife was visited by a girlfriend as a result of earlier plans the two had made to go shopping. Sometime shortly after noon, the appellant went to his mother-in-law's home; instead of approaching the residence himself, he asked a neighbor's child to knock on the door of his wife's residence and to ask for the appellant's son to come out.

The wife went to the door cautiously in response to the child's knock. She was being careful because her husband had, for almost a week, continuously threatened to kill her, saying he would then turn himself in. Seeing the small child outside, and unsuspecting of the ruse which was being perpetrated by her husband, she opened the door. As soon as the door was opened, the appellant leaped toward his spouse; he had a knife in his hand.

It is not pleasant for the writer of this opinion to have to relate any of the gruesome details of the assault that followed, but some of the record facts, pertinent to the issues raised on appeal, must be noted. Before appellant struck the first blow, he said the following to his wife: "I've got you now . . . I want to see if you'll survive this . . . you are going to die." Appellant first stabbed his wife in the head. He had difficulty in removing the blade, but finally did so and seriously stabbed his wife at least five more times, once in the spine so that she became paralyzed. He then turned his attentions from his wife to her unfortunate friend. He first castigated her and then stabbed her in the face and back. Finally, he returned to where his wife lay helpless, and stabbed her again, this time in her stomach.

Appellant then gathered up his children, took them from the house, and walked quickly from the house. After a short time, he ran. Approximately one hour later appellant turned himself into police as "the one who did the cutting in the 2200 block of 6th Street."

The appellant, at trial, stated that he did not know the difference between right and wrong at the time of the assault. He claimed he did realize he was the actor in these events. However, he testified: ". . . it seemed like everything went blank. The next thing I remember I was pulling my knife out of her [his wife's] head." He recalled going from his wife to her friend.

A psychiatrist testified for the defense. He stated that he had examined the appellant five times following the stabbing incident. The psychiatrist was asked by defense counsel whether he had come to a "diagnosis of Mr. Washington as to the time of the event, February 15, 1973 . . . ?" The psychiatrist answered that he had not. The defense counsel then asked if the witness had reached a conclusion. The reply was: "I had a *strong clinical impression* and I was working on a—I established for myself at least a *provisional diagnosis*." [Emphasis supplied.]

The psychiatrist testified that his "impression" was that the appellant suffered a "gross stress reaction." When asked to explain this in layman's terminology, the psychiatrist offered: "It's under profound stress, someone really like blows their cork for a time." He testified it was his opinion that the defendant did not know the difference between right and wrong during the attack on the two women. He testified that he knew of no other similar psychological episode in appellant's past and further stated that the gross stress reaction was only temporary. On cross-examination, the witness stated that the nature of the appellant's psychotic episode (at the time of the stabbing incident) was ". . . . up for grabs." He admitted he had reached no final diagnosis as a result of his examinations.

Because the testimony relating to the appellant's state of mind at the time of the crime is so important to the issues raised by the instant appeal, other aspects

of the testimony and facts of record relevant to this question must be discussed. The psychiatrist who testified for defendant was subjected to *voir dire* examination concerning his professional training and background. He revealed that he had not attended a standard medical school, but was rather a graduate of a school of osteopathic medicine. He admitted he was not a member, fellow of or certified by several professional psychiatric bodies and boards about which he was questioned.

It is of course the decision of the trial court rather than the jury as to whether a particular witness qualifies as an expert.[1] The lower court has very broad discretion in such decisions. *Laubach v. Haigh,* 433 Pa. 487, 252 A. 2d 682 (1969) ; see also *Commonwealth v. Morris,* 205 Pa. Superior Ct. 105, 207 A. 2d 921 (1965). However, it has long been held that the weight to be given to the expert testimony is a question for the jury. *First National Bank of Easton v. Wirebach,* 106 Pa. 37 (1884). In our evaluation of the expert testimony in the instant case, regarding the appellant's mental condition at the time of the crime, we find pertinent the following resume from the opinion of the learned lower court:

> "The psychiatrist testified that he had seen the defendant five times for one hour office visits starting some weeks after the stabbings. The psychiatrist, who made no physical objective findings, conducted no tests and confined his examinations solely to interviews with the defendant, testified that he reached a *provisional* diagnosis. . . . On Cross-Examination,

---

1. The Commonwealth contends, as it did in the lower court, that the psychiatrist was not qualified to testify as an expert. In our Commonwealth, a witness who has any "reasonable pretention to specialized knowledge" on a subject under investigation may testify as an expert witness. *Fady v. Danielson Construction Company,* 224 Pa. Superior Ct. 33, 302 A.2d 405 (1973). We believe the trial court did not abuse its discretion in holding that the psychiatrist who testified in this case satisfied that standard.

which was marked by numerous and prolonged pauses by the psychiatrist, he conceded that he had not reached the point in his treatment of the defendant of making a *firm* diagnosis."

On this appeal, appellant makes no mention of, nor apparently places any reliance upon the two most recent leading cases of our Pennsylvania Supreme Court dealing with such defenses as insanity.[2] *Commonwealth v. Rose,* 457 Pa. 380, 321 A. 2d 880 (1974) and *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A. 2d 627 (1974). Both cases established that the defendant did not have the burden of proving a defense such as insanity; rather, the Commonwealth bears the risk of "non-persuasion" if such issues are raised. *Rose, supra.* The Commonwealth can introduce evidence to avoid the risk of non-persuasion, although it has "no duty to do so." *Rose, supra* at 390, 321 A. 2d at 885. It is also clear that lay testimony may be used to establish sanity, even of a defendant who has offered expert testimony as to insanity. *Commonwealth v. Demmitt, supra; Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A. 2d 469 (1970).

In the instant case, we find the following evidence supportive of the jury's clear conclusion that the appellant knew the nature and quality of his act and knew that it was wrong:

1. The appellant himself testified to other occasions in the past when he had severely attacked his spouse or at least attempted to do so; no psychological disability was claimed to have existed during such episodes.

2. He testified his attack on his wife was provoked by marital disharmony and fights which had occurred days and even weeks before the stabbing.

---

2. Appellant argues merely that evidence compelled a finding that he was temporarily insane at the time of the attacks. He does not discuss the defendant's or the Commonwealth's burdens with respect to proof on that issue.

3. Lay testimony was presented as to the defendant's demeanor at the time of the knife attacks and afterward which support a finding of sanity.

4. Evidence was presented that for some time appellant had threatened the attack and other conduct which finally led to his giving himself up to police, also as he had predicted. Such threats and predictions were made during a time period before the onset of the single psychotic episode about which the psychiatrist testified.

5. The appellant, who at one point testified he did not know what was occurring when he first attacked her, testified he did know what happened when he pulled the knife from his wife's head. Nevertheless, he went on to continue to attack his wife, then her friend, and finally his wife again. At other points in his testimony, appellant contradicted himself, declaring he drew a "blank" in memory concerning the whole episode. It is therefore noteworthy that he reported to police, one hour after the crime, that he had done some "cutting" at his wife's residence.

6. Within a few minutes of the attack, appellant *fled* the scene, indicating he knew he had done something wrong.

Considering all of these factors, and the record as a whole, we must agree with the conclusion of the learned lower court, as expressed in its opinion:

"Considering the lack of finality of the defendant's psychiatrist's diagnosis, the psychiatrist's demeanor before the jury and the totality of the Commonwealth's lay evidence presented at trial, the Commonwealth presented sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was sane at the time of the stabbings."

Appellant raises two other claims which we find lack merit. First, it is contended that a mistrial should have been declared when the Commonwealth asked appellant

whether he possessed a knife while he was testifying. A successful objection was raised to this question by defense counsel, and appellant did not answer. The question was reasonably raised by the Commonwealth in the context of other questions concerning the appellant's regular course of conduct in possessing such a weapon at times other than the time the attacks occurred. We cannot find that this question, which the jury was instructed not to consider (along with other questions to which successful objection was made), was so prejudicial as to fix bias and hostility in the minds of the jurors towards appellant. *Commonwealth v. McNeal,* 456 Pa. 394, 319 A. 2d 669 (1974). Last, appellant claims that he was denied the right to challenge the array of the jury. It is clear that appellant's oral attempt to raise this issue, on the first day of trial, was in non-compliance with the requirements of Pennsylvania Rule of Criminal Procedure 1104. It is also clear that appellant's challenge was merely to the *composition* of the panel of prospective jurors assembled for jury selection in his case; he did not challenge the selection process for the entire panel nor allege any deliberate plan or scheme to eliminate prospective jurors on the basis of any discriminatory motivation. In view of all these facts, appellant's arguments concerning his attempted jury challenge must be denied. *Commonwealth v. Butler,* 448 Pa. 128, 291 A. 2d 89 (1972).

Affirmed.

HOFFMAN, J., concurs in the result.