395 A.2d 1359

STONE & WEBSTER ENGINEERING CORPORATION, Appellant,

v.

HEYL & PATTERSON, INC.

v.

JOHN HARRISON COMPANY, Eichleay Corporation and Sargent Electric Company.

JOHN HARRISON COMPANY, a Pennsylvania Corporation, Appellant,

v.

HEYL & PATTERSON, INC., a Corporation

v.

EICHLEAY CORPORATION and Sargent Electric Company.

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Dec. 20, 1978.

152

James A. Wood, Pittsburgh, for appellant at No. 537.

No appearance entered nor brief submitted for appellant at No. 552, and appellee at No. 537.

Robert S. Grigsby, Pittsburgh, for appellee, at No. 552.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The instant case involves a fairly complicated factual situation as well as a procedural one. Two appeals have been consolidated for our review, however, both have their origins in a case initiated by the wife and administratrix of the estate of Lewis M. Webb who was killed while in the employ of the Sargent Electric Company. As briefly as possible without omission of any salient facts the history of the appeals are as follows:

The Duquesne Light Company in an effort to improve its operations entered into a contract with the Stone & Webster Engineering Company (hereinafter referred to as Stone) whereby Stone was to act as its agent for the construction of a facility for unloading coal from barges at a location known as the Cheswick Plant. Acting as Duquesne Light's agent Stone entered into a contract with Heyl & Patterson, Inc., (hereinafter referred to as Heyl) whereby Heyl agreed to undertake the construction of the facility. Heyl in turn entered into various agreements with subcontractors for the purposes of obtaining materials, supplies, and labor. One of the subcontractors was the John Harrison Company (hereinafter referred to as Harrison) which was to construct and sell a cabin which was to be situated high on a crane

overlooking the barge docking facilities and unloading equipment. Heyl also contracted with the Eichleay Corporation (hereinafter referred to as Eichleay) to erect certain equipment in and about the cabin and with the Sargent Electric Company (hereinafter referred to as Sargent) to do the wiring of the cabin. Lewis M. Webb was an employee of the Sargent company and in the course of his duties was working in the cabin. Pursuant to the agreement between Heyl and Harrison and in keeping with the specifications for the job which were approved and adopted by Stone, Harrison was to have installed one-quarter inch plywood covering all openings in the cabin. Instead, Harrison installed one-eighth inch pressboard. While working in the cabin, Webb went through an opening falling a considerable distance to a coal barge beneath the cabin. He was pronounced dead at the scene by a physician.

On April 3, 1970, Elsie M. Webb filed an action in trespass against Harrison and Eichleay for damages arising out of the death of her husband. Harrison filed a complaint to join Heyl, Sargent and Stone as additional defendants. Sargent subsequently filed its answer and new matter. In its new matter Sargent asserted the affirmative defense of an employer whose liability is limited by the Pennsylvania Workmen's Compensation law. Heyl filed its answer and new matter wherein it denied liability and set forth affirmatively, under new matter, the defense of statutory employer as well as other defenses against the respective parties. The affirmative defenses against Harrison, Eichleay and Sargent averred that each of these parties agreed to indemnify Heyl for any liability that it may have to the plaintiff and/or other parties to the proceeding. By reply to the answer and new matter of Heyl, Sargent denied liability for indemnification to Heyl. Eichleay filed its reply to Heyl's answer and new matter wherein it denied that Heyl was entitled to indemnification and that it was either jointly or severally liable with Heyl to any other person. There is nothing in the record to disclose that Harrison ever replied to Heyl's new matter and consequently the averments of Heyl's new matter as affects Harrison must be taken as correct.

The Webb case went to trial before a judge and jury, but prior to conclusion settlement negotiations were conducted between all counsel with the assistance of the trial judge. As a result of these negotiations an agreement was entered into between plaintiff and defendants Harrison and Eichleay and additional defendants Sargent and Stone. Pursuant to the agreement Harrison was to contribute $30,000, Eichleay was to contribute $15,000 and Stone was to contribute $15,000. Sargent waived any claim for past and future subrogation interest as the party who paid the Workmen's Compensation benefits. Heyl paid no money, but was aware of the negotiations for settlement and did not object to the termination of the proceedings against it which also terminated its claim for indemnification against Harrison, Eichleay and Sargent. Plaintiff filed a petition for approval of the settlement which eventually resulted in an order dated October 5, 1972, amending the order of July 17, 1972 as follows:

AND NOW, to-wit, this 17th day of July 1972, the within petition having been presented, it is hereby ordered and decreed that Elsie M. Webb, Administratrix of the Estate of Lewis M. Webb, deceased, be and is hereby authorized to execute releases and settle the within captioned case. Upon payment as set forth below, the retained law firm of McArdle, McLaughlin, Paletta & McVay will see to distribution as follows:

| | |
|---|---|
| To McArdle, McLaughlin, Paletta & McVay Counsel Fees of 33⅓% | $20,000 |
| Under the Survival Act To Elsie M. Webb for reimbursement of funeral expenses | $ 3,000 |
| Under the Wrongful Death Act To Elsie M. Webb, surviving wife under the Wrongful Death Act | $20,000 |
| To a Guardian to be appointed for the Estate of Malinda Webb, a minor, and the dependent daughter under the Wrongful Death Act | $17,000 |
| Total | $60,000 |

By the Court

_____
Judge

On November 9, 1972, Harrison filed a complaint against Heyl which contained two counts; the first for indemnification and the second for contribution. Harrison subsequently abandoned its claim for indemnification and sought contribution in the amount of $15,000 from Heyl; one-half the amount paid by Harrison in settlement of the Webb case. Heyl filed an answer denying its liability for contribution and asserted under new matter that Harrison abandoned its claim when it voluntarily agreed to settle with the Webb estate. Heyl also asserted Harrison abandoned its claim when it entered into the negotiations being apprised of the respective claims and the potential liabilities of the parties and that as a statutory employer it was discharged from any liability because of payments made by the employer (Sargent) of Webb. Heyl also filed a complaint to join as additional defendants Eichleay and Sargent on the theory that both are liable to indemnify it and for contribution as a joint tortfeasor.

On January 2, 1973, Stone commenced an action in trespass and assumpsit against Heyl alleging in count one that Heyl by written agreement promised that it would hold Stone harmless against any and all liabilities and it would be absolutely responsible for all liabilities arising out of any accidents. It was also agreed that Heyl would defend any suit brought against Stone upon timely notice to defend such a suit. The second count of the Stone complaint was in trespass and alleged that Heyl was negligent and that because of this negligence as well as the conduct of Stone that Heyl was under a duty to indemnify it. Heyl filed a complaint to join Harrison, Eichleay and Sargent as additional defendants alleging therein that Heyl was entitled to indemnification in accordance with a contractual agreement and/or in the event it was held liable on the grounds of negligence that it would be entitled to contribution from the defendants as joint tortfeasors. In Heyl's answer to Stone's complaint it denied liability and raised in new matter the affirmative defense of waiver of right of contribution by Stone because Stone failed to assert it as a claim in the

Webb case, Stone consented to the settlement, and Stone failed to assert certain defenses such as statutory employer. The additional defendants filed the appropriate pleadings and on petition by Heyl the cases of Heyl and Stone were consolidated for trial. A jury was selected and the plaintiffs presented their respective cases. Upon completion of the plaintiffs' cases the court entertained and granted motions for compulsory non-suit in the two cases. The plaintiffs filed motions to remove the compulsory non-suits which motions were denied by the court and this appeal followed.

The court below stated in its opinion that the motion of Harrison was denied for two reasons. First, that Harrison failed to produce any evidence to show that it as well as Heyl were joint tortfeasors whose negligence was the proximate cause of the death of Lewis M. Webb. Secondly, that the settlement entered into by Harrison in the Webb case estopped Harrison from asserting a claim against Heyl because all parties to the instant lawsuit were parties to the Webb suit wherein the respective claims and positions were presented. With respect to the motion for removal of the compulsory non-suit of Stone, the lower court cited three reasons for denying it. First, Stone failed to produce any evidence that Stone and Heyl were joint tortfeasors whose negligence was the proximate cause of the death of Webb. Secondly, Stone was not entitled to any indemnification under its contract with Heyl inasmuch as it failed to produce evidence to establish that it was obligated under the law to make payment to Webb and therefore its payment was that of a volunteer. And lastly, Stone's voluntary settlement of the claim of Webb estopped it from asserting a claim now against Heyl.

 Initially, we must consider whether or not appellants are prevented from initiating an action for contribution after entering into a settlement in a suit where all parties in the instant suit were parties to the original suit. The lower court stated that it was of the opinion that the case was controlled by our decision in Barson's and Overbrook, Inc. v. Arce Sales Corp., 227 Pa.Super. 309, 324 A.2d 467 (1974). In

*Barson's*, the original defendant, Barson's, joined two additional defendants, suppliers of smoked fish, in a suit instituted by several people who became ill after eating the fish at Barson's restaurant. A settlement was negotiated between the plaintiffs and the three defendants. Following the negotiations each defendant contributed funds to settle the case. Barson's did not reserve any rights to proceed against the two additional defendants at the time of the settlement. Subsequent to the entry of the orders to settle, discontinue and end the suit, Barson's instituted suit against the two additional defendants for contribution and indemnification. On appeal from an order granting a motion by defendants for judgment on the pleadings, we held that the issues of liability of the respective parties had been previously litigated and the settlement acted as a bar to any further proceedings. In the instant case, a great deal of the proceeding in the lower court concerned the reading into the record of the testimony of certain witnesses who appeared in the original Webb law suit. This testimony was introduced by the appellants to establish the liability of the respective parties. This was necessary in order to bring all of the parties in the instant appeal within the purview of the Uniform Contribution among Tortfeasors Act. Therefore, it is apparent that the relative liabilities of the parties had been settled by the previous litigation, i. e. the Webb law suit. In being consistent with our earlier decisions, we hold that appellants are estopped from raising a claim for contribution in the proceeding below. In further support of its decision, the lower court held that the granting of the compulsory non-suits was proper because appellants failed to make out a prima facie case of Heyl's liability.

The law governing the granting of a non-suit has been well settled in Pennsylvania for some time. In *Paul v. Hess Brothers, Inc.*, 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973) we stated:

> On appeal from a compulsory nonsuit the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct

*or circumstantial*, and all conflicts must be resolved in the plaintiff's favor. *McDonald v. Ferrebee*, 366 Pa. 543, 79 A.2d 232 (1951). A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. *McNett v. Briggs*, 217 Pa.Super. 322, 272 A.2d 202 (1970).

To justify the granting of a non-suit, it must appear from plaintiff's statement of his case that there is a complete absence of evidence legally sufficient to maintain the action. If the plaintiff presents a prima facie case, then it is the function of the jury to pass on the credibility and persuasiveness of the plaintiff's evidence. *Fady v. Danielson Construction*, 224 Pa.Super. 33, 302 A.2d 405 (1973). Instantly, we are confronted with the question of whether or not the appellants have presented prima facie cases supporting their respective claims for contribution.

The right of contribution has been codified in Pennsylvania under the *Uniform Contribution among Joint Tortfeasors Act*, 1951, July 19, P.L. 1130, § 2, 12 P.S. § 2083, where it states:

(1) The right of contribution exists among joint tortfeasors; (2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof; (3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

Section 2082 of the Act defines joint tortfeasors as: "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." Therefore, in order for either appellant to recover on a claim for contribution it is necessary that it establish that appellee was jointly or severally liable in tort for the death of Lewis Webb. The lower court concluded that neither appellant met the burden of proof establishing the liability of Heyl.

After a thorough review of the record and transcript from the court below, we must agree that the appellants failed to produce evidence sufficient to indicate Heyl's liability. The evidence presented established that one-eighth-inch pressboard was installed in the cabin constructed by Sargent rather than one-quarter-inch plywood as required under the contract. However, the contract, which was introduced into evidence, stated that glass was not to be installed in the cabin at the time of delivery, but instead one-quarter-inch plywood was to be installed covering all openings for "protection during shipment against weather and vandalism." There was no testimony whatsoever that the substitution of pressboard for plywood had a causal connection with the death of Lewis Webb. Furthermore, there was a complete lack of evidence that Heyl was negligent in any manner so as to have proximately caused the death of Webb. Although it was proffered by appellants that Heyl had a duty to provide the employees of the respective companies with safe working conditions, the appellants, both Harrison and Stone, failed to establish that Heyl did not provide the proper conditions. It is within the province of a jury to draw reasonable inferences from the evidence, *McNett v. Briggs, supra*; however, it is clearly error to allow them to guess at an element as essential as causal connection in a negligence case. This is exactly what appellants would have had the jurors do had the cases been presented to them for their deliberation.

On the basis of the foregoing opinion we affirm the order of the lower court denying appellants' motions to remove the compulsory non-suit.

SPAETH, J., filed a concurring opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I agree with the majority that appellants failed to make a prima facie showing that appellee's acts or omissions con-

tributed to Lewis Webb's death, and that they were there-
fore not entitled to contribution from appellee under the
Uniform Contribution Among Tortfeasors Act.* However,
the majority's holding does not dispose of Stone and Web-
ster Engineering Corporation's contractual claim against
appellee. Stone argued at trial and on appeal that under
the indemnity provision contained in its contract with appel-
lee, appellee was obliged to indemnify it for any payments it
made to Webb's administratrix on account of its own negli-
gence, or the negligence of appellee as general contractor or
of any subcontractor. Therefore, in order to determine
whether the compulsory nonsuit was properly entered
against Stone as regards this claim, we must consider
whether the evidence was sufficient to support a finding
that the negligence either of Stone, the general contractor,
or any subcontractor contributed to Webb's death.

The facts adduced at trial on this issue are as follows.
Stone hired appellee as the general contractor on a construc-
tion project. Appellee ordered an "operator's cab" from the
John Harrison Company. The purchase order form for the
cab specified that Harrison was to install "¼" thick plywood
over all openings to the cab for protection during shipment
against weather and vandalism." Harrison, however,
used ⅛" pressboard instead. Eventually, the cab was erect-
ed on a crane at the construction site, and Lewis Webb, an
electrician who was working in the cab, fell through the
pressboard covering one of the openings in the cab. Webb's
co-workers testified that the pressboard did not present a
hidden peril to the workers, and that all the workers, includ-
ing Webb, knew that it would not withstand much pressure.
Stone's Project Safety Engineer testified that in his belief
Stone had complied with all safety regulations. Moreover,
even though the Project Safety Engineer had been in the
cab only days before the accident, and at that time had
failed to note the substitution of pressboard for plywood,
there was no testimony indicating that he should have
known of the substitution. In deed, there was no testimony

* Act of July 19, 1951, P.L. 1130, § 2, 12 P.S. § 2083.

that the installation of plywood instead of pressboard would have prevented the accident, or that there existed a duty on anyone's part to close the openings in the cab securely for the safety of workers.

I do not believe that on these facts the jury could have found that Webb's death was caused by the negligence of anyone connected with the construction project. The substitution of pressboard by Harrison may have been a breach of its contract with appellee; but Stone failed to prove that this breach constituted negligence, and that this negligence caused Webb's death. In addition, Stone did not show that either it or appellee breached its duty as regards worker safety. Compulsory nonsuit was therefore proper on Stone's contractual indemnity claim.

Because I believe that compulsory nonsuit was proper, I have not considered whether appellants were estopped under *Barson's and Overbrook, Inc. v. Arce Sales Corp.*, 227 Pa.Super. 309, 324 A.2d 467 (1974).