396 A.2d 738

Richard V. HAEBERLE, Administrator of the Estate of Tracey Ann Haeberle, Deceased, Appellant,

v.

John D. PETERSON and Thomas P. Peterson and Shirley Peterson, his wife

v.

Richard V. HAEBERLE and Mildred Haeberle, his wife.

Superior Court of Pennsylvania.

Argued Dec. 8, 1977.

Decided Dec. 29, 1978.

Howard F. Riley, Jr., West Chester, for appellant.

Lawrence E. Wood, West Chester, for appellees, Peterson.

No appearance entered nor brief submitted for appellees, Haeberle, h/w.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This is a child dart-out case in which the parents of the deceased child brought suit against the driver and his parents. The defendants joined the parents of the child as

additional defendants. The suit was dismissed as to the parents of the driver prior to submission of the case to the jury. The jury returned verdicts in favor of the remaining defendants. Appellants' motion for a new trial with respect to the judgment in favor of the driver was denied and they have appealed.

The victim of the accident was a six-year old child, Tracey Ann Haeberle. She was riding her bicycle on Crump Road in Uwchlan Township, Chester County, when struck by an automobile driven by John D. Peterson, the appellee. He testified that when he first saw the child, she was "dead center" in front of his car and only two or three feet away. He testified that he "slammed on" his brakes and brought his car to a stop, but not before striking the child and inflicting injuries which resulted in her death.

The accident occurred at dusk on a stretch of Crump Road made more dangerous at that hour by the fact that the road goes from a relatively open territory into a stretch of roadway where trees and shrubbery crowd in on the road from both sides. The accident occurred just as Peterson's car was emerging from this stretch of wooded roadway into a clearing. His car lights were on.

The child apparently rode her bicycle directly into the path of Peterson's car. There is no evidence as to exactly where she came from. The driver did not see her until she was immediately in front of his car. At the first sight of the child, Peterson testified that he slammed on his brakes and brought his car to a stop. Skid marks for a distance of six feet nine inches, plainly visible, and agreed to be those of his car, resulted as the wheels of the car locked under the impact of the brakes. Nevertheless, the child was hit and thrown a distance of some 49 feet from where the skid marks began. Most of the bicycle was found 73 feet from that point. The child weighed approximately 45 pounds and the bicycle about 15 pounds. There is no evidence as to whether the bicycle skidded, rolled or was tossed in the air. Peterson estimated that he was travelling at a speed of 20 to 25 miles per hour. A civil engineer, called by the appellee as an expert witness, calculated the speed of Peterson's car to

have been 11.3 miles per hour at the moment when its brakes locked and the skidding began.

Appellant presents three arguments for a new trial: (1) that the expert witness who testified as to the speed of the car at the moment the brakes locked was not qualified as an expert; (2) that assuming the qualification of the witness, his testimony was nevertheless inadmissible because based on a disputed assumption that the car had been brought to a stop at the end of the skid marks; and (3) that the verdict was against the weight of the evidence.

 The expert witness Professor David J. Schorr, is an assistant dean of engineering and a professor at the School of Engineering of Villa Nova University. He obtained degrees in Civil Engineering at Drexel University and the University of Pennsylvania. He is a licensed civil engineer in Pennsylvania, New Jersey and Delaware. For 13 years, he has headed an engineering firm specializing in highway design, analysis of urban regional developments, highway safety and accident reconstruction. His testimony as an expert in highway safety and accident reconstruction has been received in numerous state and federal courts. We have no difficulty in agreeing with the trial court that he was well qualified to calculate and testify as to an estimate of the speed of the vehicle based on the weight of the car, the length of the skid marks, the grade of the street, the characteristics of the road surface and other considerations which he identified. This is a calculation beyond the skill of an average person and an appropriate subject for expert testimony: *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 41, 233 A.2d 896 (1967); *Fady v. Danielson Construction Co.*, 224 Pa.Super. 33, 38–39, 302 A.2d 405 (1973).

 Appellant's second contention is that Professor Schorr should not have been permitted to testify to his calculation of the speed of the car at the moment the brakes locked, because there was no conclusive evidence to support the assumption in the question propounded to him that the car had been brought to a stop at the end of the skid marks. He was asked to assume that "the vehicle did come to a stop at the point where the skid marks ended" and in his reply,

he stated that "the calculation is based upon the vehicle coming to a stop at the end of the skid marks". He was asked on cross examination to "assume for the moment the vehicle did not stop at the end of the skid marks, that that was merely a braking reaction in which the driver hit the brakes and he brought the vehicle to a stop at another point". The witness replied, "You have given me now a whole different problem and you have not given me enough information . . ."

The testimony on which the assumption was based and from which the jury might conclude that the car was brought to a stop at the end of the skid marks was that of the driver of the car and a neighbor who ran to the scene of the accident. The driver testified that he slammed on his brakes and brought the car to a stop. The neighbor testified that when he first saw the car, it was stopped at approximately the location of the skid marks. The testimony of these witnesses was sufficient to justify the jury in concluding that the assumption given to the expert that the car had been brought to a stop at the end of the skid marks was correct. There was no testimony that the car continued in motion beyond that point.

The appellee was entitled to make an assumption which his testimony supports even though it was a disputed one. This was ruled in *Gillman v. Media, etc., Railway Coal*, 224 Pa. 267, 274, 73 A. 342, 344 (1909), where the court states that "a party may state specifically the particular facts he believes to be shown by evidence or such facts as the jury would be warranted in finding from the evidence, and ask the opinion of the expert on such facts, assuming them to be true".

The court made it abundantly clear to the jury that the testimony of an expert witness should not be accepted unless it found to be correct the assumptions on which his testimony was based. The court charged, among other things:

"[T]he opinion of an expert has value only when you accept the facts upon which it is based . . . . Questions have been asked in which the expert witnesses were invited to assume that certain facts were true and to give

an opinion based upon that assumption. These are called hypothetical questions. If you find, for example, that a material fact assumed in a particular hypothetical question was not established by evidence, you should disregard the opinion of the expert given in response to that question."

We conclude that the witness was qualified to given an opinion as to the speed of the car, that the assumption in the question propounded to him had sufficient support in earlier testimony to make it a permissible one and that the issue of fact thus raised was appropriately submitted to the jury.

■ We find no basis for concluding that the verdict was against the weight of the evidence. The contention to the contrary is based upon the claim that Peterson was driving at an excessive rate of speed and that he was inattentive to who or what was in the road ahead of him. Support for these arguments depends entirely upon the inference to be drawn from the fact that the child's body was thrown 49 feet and the bicycle 73 feet. Such an inference was contradicted by the driver's own testimony and that of the expert witness as to the rate of speed.

Professor Schorr testified that there was no inconsistency between his calculation of speed and the distance from impact at which the child's body and the bicycle were found. He explained that a car weighing several thousand pounds moving at a velocity of 11 miles per hour hitting objects as relatively light in weight as the child and her bicycle would generate sufficient energy to propel them those distances.

■ The argument that Peterson was careless or inattentive in his driving is based solely on the circumstance that he hit the child. He testified that he was driving at a moderate rate of speed and that his headlights were on when the child appeared out of nowhere only a foot or two in front of his car. Determination as to whether he was driving at an excessive rate of speed or whether he was inattentive depends largely upon the few known circumstances of the accident and the inferences to be drawn from the post-accident scene. No one but the driver saw the accident. In this

sad and most unfortunate situation, the jury has decided that Peterson was not negligent. We find no basis for refusing to accept that conclusion.

Affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.