## Parker *v.* Jones, Appellant.

Argued April 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Ralph B. D'Iorio,* with him *Cramp and D'Iorio,* for appellant.

*James C. Brennan,* with him *Hinkson & Cantlin,* for appellee.

OPINION BY MR. JUSTICE JONES, September 27, 1966:

This is an appeal from an order of the Court of Common Pleas of Delaware County entered in a trespass action wherein the court granted a new trial to John Parker (Parker) subsequent to a jury verdict in favor of Amelia Jones (Mrs. Jones).

Briefly, the factual background of this litigation is as follows: on March 4, 1964, at approximately 11:45 a.m., Mrs. Jones was operating her automobile in an easterly direction on Route 1 in Concord Township, Delaware County; at the point of accident, Route 1— 52 feet wide and running generally east-west—consists of two westbound and two eastbound lanes—each lane being 12 feet wide—separated by a four feet wide medial strip;[1] Parker, a pedestrian, was engaged in crossing the highway, at a point between the intersections of Routes 322 and 202 with Route 1, from the northerly to the southerly side of the highway; Parker

---

[1] At the location of the accident this strip was broken to accommodate traffic to a business concern located on the southerly side of the highway.

had successfully negotiated passage over the two westbound lanes and had crossed over the two eastbound lanes to a point approximately a foot from the southerly edge of the highway when he was struck by Mrs. Jones' automobile then traveling in that eastbound lane nearest the southerly edge of the highway.

Parker instituted a trespass action against Mrs. Jones in the Court of Common Pleas of Delaware County and, after a trial, the jury returned a verdict in favor of Mrs. Jones and against Parker. On Parker's motion, the court below granted a new trial upon three particular grounds: (1) that the trial court should have submitted to the jury the issue of wanton misconduct on Mrs. Jones' part so that the jury could have considered whether Parker was entitled to recover, regardless of any contributory negligence on his part; (2) that the trial court should not have instructed the jury on the duty of a pedestrian crossing a highway between intersections since, under the instant factual situation, Parker was upon the highway a sufficient period of time for Mrs. Jones to have seen him;[2] (3) that additional instructions to the jury were given, in the presence of counsel but in the absence of the court reporter. From the order granting a new trial this appeal was taken.

An examination of this record indicates beyond question that Parker was guilty of contributory negligence as a matter of law. As a pedestrian about to cross this heavily trafficked highway, Parker was under a duty not only to look when he reached the medial strip but *to continue to look* as he crossed the two eastbound lanes. Parker when he reached the medial strip looked to his right or toward the west—in the direction from which he could anticipate vehicular traffic—and,

[2] Cf. *Brown v. Jones*, 404 Pa. 513, 172 A. 2d 831; *Cardiff v. Updegrave*, 409 Pa. 535, 187 A. 2d 644.

at that point, saw two automobiles[3] "a block and a half away" and "figured [he] had a chance to get across"; Parker then stated that he "went on as fast as [he] could run; it may not have been so very fast, but [he ran] as hard as [he] could to get on the outline like that". The testimony further reveals that Parker did not again look to the west until his "heel was on the white mark", the southern edge of the highway: "Q. After you started to run from some point near the center, after you saw the two cars coming from your right, you have told us, have you not, that you never looked to your right again? A. Never looked until just about a half second before this here car hit me, when I made my jump. Q. And how close were you to the edge of the road then when you looked to your right again? A. My heel was on the white mark. . . . Q. What I am asking you is, even though you did not see any other cars coming from your right, was the visibility such that you could see further on down the road behind the two cars that were coming toward you? A. I did not look, I tell you, I did not look. I never looked, not until I got across and put my, this right foot, the left foot I mean, on the white line; and then I looked and here was a car right up on me, and I made my jump and it got me in the right side. Q. When you stood there for that one-half second somewhere near the white line or the center line, you knew, did you not, that there were two lanes for cars coming from Wilmington towards Media, from your right to your left? A. That is right." Thus, it is clear that Parker traversed approximately 24 feet of the highway without looking in the direction from which traffic would be anticipated or seeking to ascertain the position of the eastbound automobiles.

---

[3] These automobiles were in the northerly lane of the two eastbound lanes. According to Parker, he never did see Mrs. Jones' automobile.

In *Shuman v. Nolfi,* 399 Pa. 211, 214, 159 A. 2d 716, Mr. Justice EAGEN, speaking for this Court said: "In the instant case, the plaintiff looked before he started to cross the roadway but it is crystal clear that he did not continue to look as he proceeded to cross the busy thoroughfare. This in itself convicted him of contributory negligence. It was a clear violation of his definite obligation, even if no approaching traffic were visible before he undertook to cross. But, it was even more incumbent upon him to continue to look as a reasonably prudent man interested in his own safety would do, in view of the fact that, before he started to cross, he saw the automobile of the defendant approaching from a comparatively short distance away. His own foolhardiness in blindly jay-walking across a busy street at least contributed to this unfortunate occurrence. This renders recovery impossible under a long line of Pennsylvania authorities." See also: *Sweigert v. Mazer,* 410 Pa. 71, 74, 188 A. 2d 472; *Gatens v. Vrabel,* 393 Pa. 155, 159, 142 A. 2d 287; *Auel v. White,* 389 Pa. 208, 213, 132 A. 2d 350.

We recognize and adhere to the rule that contributory negligence should not be declared as a matter of law save where such negligence is so clearly revealed that fair and reasonable individuals cannot disagree as to its existence: *Sweigert v. Mazer,* 410 Pa. 71, 188 A. 2d 472. However, a study of the instant record convinces us that Parker's negligence is so obvious and clear as to require that we declare him guilty of contributory negligence as a matter of law. Parker, after stopping at the medial strip and observing two eastbound vehicles approaching, committed himself to crossing this 24 feet of highway without continuing to look to the west to observe the position of these or any other eastbound vehicles. Having failed to maintain a proper lookout he was negligent and his negligence contributed to the happening of this accident.

Such contributory negligence would bar Parker from recovery unless the instant facts portray a situation from which a jury, properly instructed, could find Mrs. Jones guilty of wanton misconduct: *Moss v. Reading Co.*, 418 Pa. 598, 212 A. 2d 226. In *Evans v. P.T.C.*, 418 Pa. 567, 574, 212 A. 2d 440, this Court, adopting Section 500 of the Restatement of Torts, recently defined "wanton misconduct": ". . . if the actor realizes *or* at least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the existing danger." See also: *Moss v. Reading Co.*, supra, at p. 601.

Parker takes the position [4] that Mrs. Jones, when 500 feet away, saw Parker crossing the westbound lanes and having such difficulty with westbound traffic as to frighten her,[5] and saw Parker stopping at the medial strip and then proceeding to run across the eastbound lanes without looking to the west; that at the time Parker left the medial strip Mrs. Jones' car was five to six car lengths from Parker; that Mrs. Jones, then applied her brakes and blew her horn but was unable to avoid striking Parker. From such facts, it is argued that a reasonable person would have assumed Parker was in peril and confused and that it was his intent to cross the eastbound as well as the westbound lanes and that it was for the jury to determine whether Mrs. Jones' conduct was wanton. Mrs. Jones contends that the circumstances reveal she had no reason to expect that Parker, after arriving at a position of safety in the medial strip, would then com-

[4] Inferentially, the court below, in granting a new trial, adopted this position.

[5] It was the recklessness of Parker's conduct *in the westbound lanes* which caused this concern.

mit himself to a passage in front of the eastbound traffic which was clearly visible to him.[6]

Parker testified he never saw Mrs. Jones. Therefore, the only relevant testimony [7] now pertinent is that of Mrs. Jones. Mrs. Jones stated she first saw Parker running in front of two westbound vehicles to the medial strip; that Parker "stopped for a minute" at the medial strip looking to the east and then took a step into the eastbound lanes; that she then applied her brakes and blew her horn and Parker started to run across the eastbound lanes; that her car was "virtually stopped" when Parker was hit by "the right front bumper"; that when she saw Parker step into the eastbound lanes her car was "five to six car lengths" from him; that she was 500 feet away when she first saw Parker but he was then in the westbound lanes; that when "[Parker] reached the center and stopped [she] thought he was going to stay there"; that she had about "two seconds" from the time when Parker stepped into the eastbound lanes to make up her mind what to do.

The record shows, *unequivocally,* that, after recklessly crossing in front of the westbound traffic, Parker reached *and stopped* at a place of safety—the medial strip—where Mrs. Jones, as a reasonable person, had every reason to believe he would stay and that Parker did not commit himself to a position of danger, i.e., crossing in front of eastbound traffic, until Mrs. Jones' vehicle, travelling at a reasonable and legally

[6] There is no doubt that at the medial strip a person looking to his right or to the west would have a long unobstructed view of the eastbound lanes.

[7] However, a state policeman, testifying for Parker, stated, without contradiction, that there were skid marks 70 feet long ending with the point of impact which would support the conclusion Mrs. Jones had endeavored to stop her vehicle. In this connection, the testimony is uncontradicted that Mrs. Jones' vehicle was travelling within the speed limit.

permissible speed, was at a point where she had no opportunity to avoid the accident. The instant facts lead us to paraphrase that which we said in *Moss v. Reading Co.,* supra: "The mere fact that this action [the application of the brakes by Mrs. Jones] was too late to avoid the accident can in no way detract from the fact that [Mrs. Jones] took reasonable care to avoid the accident the minute [she] realized that [Parker] was in a position of peril." (at p. 603). The instant facts do not even remotely justify submission of the issue of wanton misconduct to the jury; the court below fell into error in concluding that the jury should have been so instructed.

Absent evidence of wanton misconduct, the clear presence of Parker's contributory negligence precludes any recovery. In view of the conclusion reached, we need not consider the other contentions made on this appeal.

The order granting a new trial is reversed and judgment directed to be entered on the verdict.

Mr. Justice MUSMANNO dissents.