599 A.2d 203

**SUMMIT FASTENERS, INC., Appellant,**

v.

**HARLEYSVILLE NATIONAL BANK & TRUST CO., INC., Appellee.**

Superior Court of Pennsylvania.

Argued May 15, 1991.

Filed Sept. 30, 1991.

Reargument Denied Dec. 2, 1991.

58

Lewis Kates, Philadelphia, for appellant.

Frederick C. Horn, Lansdale, for appellee.

Before McEWEN, KELLY and FORD ELLIOTT, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether a counterclaim plaintiff has met its burden of proof when all of the evidence supporting the counterclaim is introduced by the counterclaim defendant and whether the trial court properly refused to give the jury a wanton misconduct instruction, when it subsequently instructed the jury on the possibility of awarding punitive damages. We affirm in part and reverse in part.[1]

---

**1.** We note that appellant's appeal lies from the court's dismissal of post-trial motions. Such an order, unless reduced to judgment, is interlocutory and cannot be appealed. *See generally Fernandez v. Levin,* 519 Pa. 375, 548 A.2d 1191 (1988); Pa.R.A.P. 301(a), (c) and (d) and 904(d). However, in the interests of judicial economy, we will consider done, "that which ought to have been done," and review appellant's claim. *McCormick v. Northeastern Bank of Pennsylvania,* 522 Pa. 251, 254, n. 1, 561 A.2d 328, 330, n. 1 (1989).

The transcript of the jury trial reveals the following scenario. Appellant, Summit Fasteners, Inc., was in the business of brokering nuts, bolts and other fasteners. The three directors and only shareholders of the corporation were Harvey Busch, Samuel Levin and Robert Kaufman. Each had equal ownership interests in Summit Fasteners, Inc., and corporate decisions could be made only when ratified by at least two of the three directors.

In 1977, Kaufman convinced the other directors to allow the corporation to obtain financing for an automobile purchase from appellee, Harleysville National Bank. The paperwork was manipulated to appear that only one director's signature was necessary to authorize the corporation to borrow. However, afterwards, a forged signature of Busch appeared on the borrowing/depositing resolution. This represented the first stage of Kaufman's fraudulent scheme.

By 1979, appellee bank was managing all of appellant's banking needs. Appellee provided appellant with a bank account and a $25,000 line of credit. The necessary documentation included that, in order to bind the corporation, signatures of at least two of the three directors would be necessary. In 1980, Kaufman was able to obtain blank bank statements from appellee bank through its Branch Manager, Arthur Mansell, appellee.[2] Moreover, appellee bank *routinely* gave the monthly bank statements *to Kaufman, in person.* Kaufman, in turn, routinely prepared false statements, indicating the receipt of checks paid to the corporation from third parties. However, Kaufman actually diverted those funds for his own use. Forged statements also reflected debts in the corporation's checking account, indicating that it had paid debtors (suppliers and tax authorities). Again, those parties were not paid, and Kaufman kept that money for himself. Kaufman's greed cost Summit Fasteners, Inc., a large amount of money. The jury

2. Kaufman claimed that he wanted blank statements to test Summit's new electronic scanner. As counsel for appellant suggested in closing, a blank bank statement would reveal no information on a scanner, while an accurate, full bank statement would really test the scanner's accuracy. N.T. at 8/11/89 at 11–12.

found that the corporation was damaged to the extent of $183,917.00. (Trial Court Opinion at 2). It was also adduced at trial that appellant's accountant had warned the directors several times about the blank bank statements and that appellant was otherwise on notice of suspicious transactions from within the corporation.

Kaufman proved to be a judgment proof defendant, as he was declared bankrupt. The defrauded corporation sought recovery from the bank and its branch manager. The appellee brought a counterclaim seeking repayment of the $25,000 line of credit it had extended to the appellant.

At trial, the jury heard appellant's claims that appellees were negligent, conspired with Kaufman, breached their fiduciary duty to appellant and had made fraudulent misrepresentations about appellant's account. The jury also heard evidence that appellant, through its directors, was contributorily negligent and that appellant owed appellee bank for funds drawn from the line of credit. The jury calculated that appellees were negligent and that appellant suffered damages of $183,917.00. However, the jury attributed eighty percent of the damages ($147,133.00) to appellant's contributory negligence. The jury also found that appellees sustained their counterclaim for $23,874.00, the amount borrowed on the line of credit. Therefore, the total verdict in favor of appellant was $12,910.00.[3] Post-trial motions were denied. This timely appeal followed.

Appellant's twelve assertions can be grouped into the following categories. First, appellant asserts error in the points of charge. Second, appellant maintains that the trial court erred in not admitting certain exhibits. Next, appellant claims that the trial court prejudiced appellant's case by allowing appellee to exceed the proper scope of cross-examination of one of appellant's witnesses. Appellant's penultimate assignment of error alleges a defective verdict

---

**3.** The jury found that appellant suffered $183,917.00 in damages; however, it awarded the appellee $23,874.00 on its counterclaim. Thus, only $160,043.00 was available to the appellant for the payment of its damages.

slip. Finally, appellant argues that appellee's counterclaim should not have been submitted to the jury because, according to appellant, no evidence in support of the counterclaim was adduced at trial.

■ We find that the trial court committed prejudicial error with regard to one of its instructions to the jury.[4] Because this alone warrants a new trial, we forego discussion of all of appellant's other arguments, except for the one that appellee's counterclaim should not have been submitted to the jury, as the resolution of this issue defines the scope of the retrial.

■ Appellant asserts error with regard to the charge to the jury. The purpose of charging the jury is to clarify the issues which the jurors must determine. *Wood v. Smith*, 343 Pa.Super. 547, 550, 495 A.2d 601, 603 (1985). In determining whether to reverse a jury verdict due to an erroneous jury charge, an appellate court must look at the jury charge as a whole; if the charge inaccurately describes the law, there is error. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Schecter v. Watkings*, 395 Pa.Super. 363, 374–75, 577 A.2d 585, 590–91 (1990), *appeal denied*, 526 Pa. 638, 584 A.2d 320 (1991). However, error alone does not mandate a new trial. To constitute reversible error, a jury instruction must not only be erroneous, but must also be harmful to the complaining party. *Jistarri v. Nappi*, 378 Pa.Super. 583, 588, 549 A.2d 210, 213 (1988); *Mickey v. Ayers*, 336 Pa.Super. 512, 514–15, 485 A.2d 1199, 1202 (1984).

4. Contrary to appellees' contention, *see* appellees' brief at 9–10, we find that appellant's challenges to the jury charges have been properly preserved for appeal. While a general exception does not ordinarily preserve a challenge to the jury charges, it is clear that, in this case, the agreement among the trial lawyers and court superseded any such strict rule. One of the results of the in-chambers, off-the-record, precharge conference was that the parties had *ipso facto* objected to all charges inconsistent with the ones suggested but rejected. *See* N.T. 8/7/89 at 2–3.

Appellant contends that based upon the evidence introduced at trial, it was entitled to a wanton misconduct jury charge. The appellant argues that a jury finding of wanton misconduct would preclude the comparative negligence of appellant from diminishing appellee's liability. Thus, the appellant asserts that the trial court committed reversible error when it failed to give the jury a wanton misconduct instruction. We agree.

Wanton misconduct "means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Fugagli v. Camasi,* 426 Pa. 1, 3, 229 A.2d 735, 736 (1967) (citations omitted). As a general rule, it is for the jury to determine whether a defendant has been guilty of wanton misconduct under the circumstances. *Parker v. Jones,* 423 Pa. 15, 20, 223 A.2d 229, 232 (1966). Where the appellant introduces evidence to show that the appellee acted in reckless disregard of an existing peril, the issue of wanton misconduct should be submitted to the jury. *Stubbs v. Frazer,* 308 Pa.Super. 257, 261, 454 A.2d 119, 121 (1982). When willful or wanton misconduct is involved, comparative negligence should not be applied. *Krivijanski v. Union R. Co.,* 357 Pa.Super. 196, 203–208, 515 A.2d 933, 936 (1986).

The appellant submitted both testimonial and documentary evidence at trial that would allow the jury to infer that appellees acted wantonly. Indeed, one of appellant's theories of the case was that appellee-Mansell recklessly disregarded the risk to appellant by continuously handing Kaufman blank bank statements. *See, e.g.,* Amended Complaint at paras. 65, 66. Furthermore, during closing argument, appellant repeated to the jury that appellee acted wantonly. *See* N.T. 8/11/89 at 12, 24, 25, 26, 31, 32–33, 37. Appellees also suggested to the jury that they were *not* reckless. N.T. 8/11/89 at 48.

During the trial, the jury heard Mansell testify that, although there was no bank policy on handing customers blank bank statements, he routinely did just that for Mr. Kaufman. N.T. 8/9/89 at 169–71. Thus, the jury could reasonably infer that Mansell's belief that blank statements would assist Mr. Kaufman in testing appellant's optical scanner, *see* N.T. 8/11/89 at 11–12, may have been intentional and/or unreasonable under the circumstances. Although Mansell testified that he was unaware of any wrongdoing by Kaufman, the jury could have believed that appellee-Mansell was on notice that something was wrong when Mr. Levin explained that it was impossible for their account to be overdrawn, as he (Mr. Levin) saw "a plus balance in a checkbook." *Id.* at 74–75. If the jury found Mansell's delivery of blank statements to Kaufman unreasonable and if it also believed that Mansell was on notice of Kaufman's wrongdoing which would harm appellant, a finding of reckless behavior would follow. While appellees may or may not have acted with reckless disregard to the rights of appellant, because *some evidence* was introduced to allow the inference of wanton misconduct, the jury should have been given a wanton misconduct instruction. *See Stubbs v. Frazer, supra.*

Moreover, the trial court properly instructed the jury as to the possibility of awarding punitive damages. A jury instruction for punitive damages may only be given when the plaintiff has submitted sufficient evidence from which the jury might reasonably conclude that the defendant's conduct was outrageous, either because of the defendant's evil motive or reckless indifference to the rights of others. *Gray v. H.C. Duke & Sons,* 387 Pa.Super. 95, 563 A.2d 1201 (1989). As the trial court properly concluded, on the basis of the evidence submitted by the appellant, that the appellant was entitled to a jury instruction on punitive damages, it logically follows that this evidence also entitled the appellant to a jury instruction for wanton misconduct which requires only a finding of an intentional act in reckless disregard of an existing peril.

We cannot conclude that the jury would not have found appellees to have acted recklessly merely because punitive damages were not awarded. The trial court instructed: "If you find that the conduct of the defendant or the defendants was outrageous, you may award punitive damage...." N.T. 8/11/89 at 110. The jury was free to award punitive damages, but it was not compelled to do so, even if it found that appellees were reckless. Furthermore, the verdict slip indicates *only* that the jury, voting 10 to 2, concluded that punitive damages were not appropriate. Verdict slip at 3. The jurors were never asked to determine simply whether appellees acted with reckless disregard towards the rights of appellant. The omission of such a charge was reversible error.

The prejudice to appellant due to the trial court's failure to give a wanton misconduct instruction to the jury was substantial. If appellees were found to have acted with reckless disregard to appellant's rights, any contributory negligence on appellant's part would not diminish appellees' liability. *Krivijanski v. Union R. Co.*, *supra;* *see also McMeekin v. Harry M. Stevens, Inc.*, 365 Pa.Super. 580, 530 A.2d 462 (1987), *appeal denied,* 518 Pa. 619, 541 A.2d 746 (1988) (comparative negligence statute applies only to causes of action grounded in *negligence*). The jury found that appellant was eighty percent contributorily negligent, removing $147,133.00 from a possible damage award of $160,043.00, thus awarding the appellant $12,910.00 in damages. A finding of wanton misconduct would have relieved appellant of that liability and would have rendered appellees one hundred percent liable. Thus, the appellant is entitled to a new trial.

Next, in order to determine the scope of the new trial, we must consider whether the appellee's counterclaim was properly decided. The appellant contends that the trial court erred when it submitted the appellee's counterclaim for the unpaid balance due on the appellant's line of credit to the jury. The appellant argues that because the appellee did not present any evidence in support of its counterclaim

even though it had the burden upon it to do so, the trial court erred in submitting the counterclaim to the jury. We disagree.

While it is said that the party with the burden of proof has the burden of "going forward with the evidence," this does not mean that a party must satisfy this burden with that evidence which he himself introduces. *See Williams v. A–Treat Bottling Co., Inc.*, 380 Pa.Super. 195, 202, 551 A.2d 297, 300 (1988). A party may be relieved of this burden by the fact that the necessary proof was introduced by his adversary. *Otto v. Western Saving Fund Society*, 343 Pa. 615, 621, 23 A.2d 462, 465 (1942). Evidence is no less effective in support of a party's case merely because it came into the case through an adversary rather than through the party. *Devlin v. Piechoski*, 380 Pa. 146, 110 A.2d 241 (1955). Generally, if there is any evidence which would allow the jury to infer liability, a counterclaim should be submitted for the jury's consideration. *Heffernan v. Rosser*, 419 Pa. 550, 215 A.2d 655 (1966); *Berry v. Friday*, 324 Pa.Super. 499, 472 A.2d 191 (1984).

Instantly, we find support in the record for the trial court's decision to submit appellee's counterclaim to the jury. The record sets forth uncontradicted evidence which was introduced by the appellant's witnesses that a $25,000 line of credit was established by the appellee on the behalf of the appellant. N.T. 8/3/89 at 272. The line of credit was drawn down into the appellant's corporate account. N.T. 8/3/89 at 377. The funds were used by the appellant and were not solely directed to Kaufman, as other funds had been. N.T. 8/7/89 at 126–127. Finally, the appellant never repaid the debt to the appellee. N.T. 8/3/89 at 345. Accordingly, we find that the counterclaim was properly before the jury and the evidence was sufficient to support the jury's verdict in favor of the appellee on the counterclaim.

In light of the foregoing, we affirm the judgment of the trial court awarding the appellee $23,874.00 on its counterclaim, but reverse and remand for a new trial on the appellant's claim due to the trial court's failure to give a wanton misconduct jury charge. *See Dunlap v. Larkin,* 342 Pa.Super. 594, 608, 493 A.2d 750, 758 (1985).

Affirmed in part and reversed in part. Remanded for proceedings consistent with this Opinion. Jurisdiction is relinquished.