IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Horan,                          :
                    Appellant           :
                                        :     No.  2622 C.D. 2015
            v.                          :
                                        :     Submitted:  May 13, 2016
Chad Newingham, Wally Dittsworth,       :
Raymond Moore, Mary Lou Wyandt,         :
Robert Mackey, Mary Canino, and         :
Jose Quinones                           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  October 24, 2016


            Patrick Horan (Horan) appeals, *pro se*, from the November 20, 2015
order of the Court of Common Pleas of Centre County (trial court), sustaining the
preliminary objections of various employees and/or officials of the Department of
Corrections (Department Defendants) and granting Horan thirty days to amend his
complaint.  We affirm in part and reverse and remand in part.


                                  **Background**

            On August 24, 2015, Horan, an inmate at the State Correctional
Institution at Benner, filed a complaint against the Department Defendants.  In this
complaint, Horan alleged that the Department Defendants falsified misconducts and
retaliated against him for filing grievances, failed to act on his reports of threats, and

did not afford him a sufficient opportunity to present evidence at the misconduct hearings. On these averments, Horan asserted constitutional claims under Section 1983[1] and alleged violations of the Department's regulations.

The averments in Horan's complaint may be summarized as follows. Horan alleges that two falsified misconducts were filed against him. Horan avers that the first misconduct was issued by Defendant Chad Newingham, a correction officer, in retaliation for filing grievances against him for failing to take action on threats made to Horan by inmate/Defendant Jose Quinones. Horan further alleges that Defendants Wally Dittsworth and Raymond Moore, also correction officers, failed to act on his reports of threats and Defendant Newingham's failure to act on those threats. Defendant Chad Newingham issued Horan a misconduct for making threats against Defendant Quinones. Defendant Robert Mackey, a hearing examiner, found Horan guilty at a misconduct hearing and sanctioned him to thirty days in the Restrictive Housing Unit ("RHU"), loss of work assignment, and loss of his Incentive-Based Transfer. (Trial court op. at 2.)

Horan alleges that the second misconduct was issued by Defendant Mary Lou Wyandt, a law librarian, in retaliation for him stating that he was going to file suit in federal court to obtain additional access to the law library. Defendant Wyandt filed a misconduct against Horan, contending that he swore at her in the library. Defendant Mary Canino, a hearing examiner, found Horan guilty at a misconduct hearing and he received thirty days of cell restriction. Horan asserts that both hearing examiners violated his constitutional due process rights and the procedural requirements set forth in 37 Pa. Code §93.10. (Trial court op. at 2.)

---

[1] Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §1983.

2

Subsequently, the Department Defendants filed preliminary objections in the nature of a demurrer, contending that Horan's complaint failed to state a claim upon which relief could be granted.

By opinion and order dated November 20, 2015, the trial court granted the Department Defendants' preliminary objections. The trial court first determined that Horan's First Amendment retaliation claims lacked merit because Horan failed to sufficiently aver a causative connection between his grievances and the misconducts issued by Defendants Newingham and Wyandt. The trial court alternatively determined that these claims failed because Horan did not plead facts averring that the retaliatory actions, i.e., the misconducts, did not advance legitimate penological goals. *Id.* at 3-4.

Next, the trial court concluded that Horan failed to plead facts essential to his constitutional due process claims against the hearing examiners, Defendants Mackey and Canino. More specifically, the trial court noted that Horan received the misconducts in advance of the hearing and thereafter received a written statement regarding the evidence and reasons for the disciplinary actions. The trial court further determined that the discipline Horan received as a result of the misconducts did not evidence atypical prison conditions and, therefore, did not implicate any liberty interests for purposes of constitutional due process. *Id.* at 5.

In addition, the trial court rejected Horan's claim that he was denied the opportunity to present relevant evidence in violation of 37 Pa. Code §93.10. In doing so, the trial court explained that under the applicable regulation, a hearing examiner has discretion to deny a prisoner's request to present evidence and/or witnesses and that the complaint was devoid of any facts establishing that the hearing examiners abused their discretion. The trial court also noted that Horan was provided with

formal misconduct hearings and the hearing examiners reviewed his written version of the events but found the versions provided by Defendants Newingham and Wyandt to be more credible. (Trial court op. at 5-6.)

The trial court also determined that Horan failed a state a claim for denial of access to the courts. As the trial court explained:

> [Horan] is alleging that [the law librarian,] Defendant Wyandt refused to allow him to access the law library outside of the general hours, therefore interfering with his pending federal civil suit. [Horan] relies on the United States District Court for the Middle District of Pennsylvania Standing Order No. 94-2, standing Practice Order in Pro Se Plaintiff Cases, as evidence that he had a time sensitive brief due when he was not granted additional library time. The Order merely states the general deadline requirements [for *pro se* plaintiffs]; it is not a specific order addressing [Horan] or his case. Further, [Horan] does not allege his case was dismissed or even that he missed any deadlines because of his inability to get extra time in the library. As such, Horan failed to state a cause of action for the denial of access to the courts.

(Trial court op. at 6.)

Finally, the trial court concluded that Horan's failure to act and/or protect claims were baseless. The trial court determined that, although Horan alleged that an inmate, Defendant Jose Quinones, verbally threatened him in the presence of Defendant Newingham, Defendants Dittsworth and Moore had no personal involvement in or knowledge of the threats; therefore, they could not be held liable on a respondeat superior theory. The trial court further determined that Horan failed to allege that he faced a substantial risk of serious harm and the attachments to the complaint demonstrate that his reports of threats were properly investigated; consequently, Defendant Newingham could not be liable for failing to take reasonable measures to protect Horan. *Id.* at 7-8.

4

In the order accompanying the trial court's opinion, the trial court sustained the Department Defendants' preliminary objections but granted Horan thirty days to amend his complaint. (Order, 11/20/2015.)[2]

Horan then filed a notice of appeal to this Court. The trial court ordered Horan to file a concise statement of errors complained of on appeal, *see* Pa.R.A.P. 1925(b), and, after he did, the trial court authored an opinion concluding that Horan's appeal was interlocutory and non-appealable because it stemmed from an order granting him thirty days to amend his complaint. Assuming that Horan's appeal was proper, the trial court referenced and relied upon its November 20, 2015 opinion and order to dispose of his assertions of error.

By order dated February 17, 2016, this Court directed the parties to address the appealability of the trial court's November 20, 2015 order in their principal briefs on the merits.

## Discussion

### Appealability

Before delving into the merits of the appeal, we first determine whether Horan's appeal lies from a final, appealable order.

With few exceptions not applicable here, Pennsylvania law permits only appeals from final orders. *Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011). Rule 341(a) of the Pennsylvania Rules of Appellate Procedure states that "an appeal may be taken as of right from any final order of an administrative agency or lower court." Pa.R.A.P. 341(a). The purpose of limiting appellate review to final orders is to prevent piecemeal determinations and the consequent protraction of litigation.

---

[2] On December 3, 2015, a default judgment was entered against Defendant Quinones.

*Hionis v. Concord Township*, 973 A.2d 1030, 1034 (Pa. Cmwlth. 2009). A final order is defined, in pertinent part, as any order that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1).

Both this Court and the Superior Court have held that an order sustaining preliminary objections, but granting leave to file an amended complaint, is not a final order for purposes of pursuing an appeal. *Hionis*, 973 A.2d at 1034; *Mier v. Stewart*, 683 A.2d 930 (Pa. Super. 1996). However, in *Ayre v. Mountaintop Area Joint Sanitary Authority,* 427 A.2d 1294 (Pa. Cmwlth. 1981), this Court explained that a plaintiff who chooses not to file an amended complaint may appeal by filing a praecipe with the prothonotary that effectively dismisses the original complaint with prejudice, thereby converting an interlocutory order into a final and appealable order. *Id.* at 1296-97; *see Hionis*, 973 A.2d at 1035-36.

In his brief, Horan contends that his appeal is from a final order because after he filed his notice of appeal, he wrote a letter to the prothonotary requesting that a final order be entered. An examination of Horan's January 28, 2016 letter to the prothonotary reveals that Horan did not want to amend his complaint and was "seeking a Final Order based on [his] claims as they stand" in his original complaint. (Horan's brief at Ex. A.) Although it is not apparent from the certified record whether the prothonotary, in fact, entered a final judgment against Horan,[3] "in the interests of judicial economy, we shall regard as done that which ought to have been done." *McCormick v. Northeastern Bank of Pennsylvania*, 561 A.2d 328, 330 n.1 (Pa. 1989); *see id.* at 330-31 & n.1 (addressing the merits of an appeal from an

___

[3] The record was officially certified on the same day that Horan mailed his letter to the prothonotary and contains no docket entries after that date.

6

interlocutory order denying post-trial motions for relief where the parties failed to praecipe for the entry of judgment and judgment was not formally entered), *accord, e.g., Gibraltar Rock, Inc. v. New Hanover Township*, 118 A.3d 461, 464 n.6 (Pa. Cmwlth. 2015); *Summit Fasteners, Inc. v. Harleysville National Bank & Trust Co., Inc.,* 599 A.2d 203, 205 n.1 (Pa. Super. 1991). Consequently, we treat this appeal as though a final judgment has been entered against Horan, and proceed to address the issues that he raises on the merits.

Retaliation

On appeal,[4] Horan contends that he pled viable First Amendment retaliation claims against Defendants Newingham and Wyandt because they "filed false, retaliatory" misconducts. (Horan's brief at 9.) Horan also asserts that the facts alleged demonstrate that there was a substantial, causal connection between the filing of his grievances against Defendants Newingham and Wyandt and the misconducts they issued against him.

In *Yount v. Department of Corrections*, 966 A.2d 1115 (Pa. 2009), our Supreme Court held that to prevail on a First Amendment retaliation claim, the complainant must state sufficient facts to show that: (1) he engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in

---

[4] "In reviewing preliminary objections in the nature of a demurrer, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion." *Orange Stones Company v. City of Reading*, 87 A.3d 1014, 1021 n.7 (Pa. Cmwlth. 2014) (citations omitted). "Ultimately, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Id.* (citations omitted).

7

adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal. *Id.* at 1120-21.

Importantly*,* our Supreme Court concluded that the final element for a First Amendment retaliation claim places the burden of proof on the complainant to affirmatively disprove that the Department's disciplinary action did not further a legitimate penological goal. According to the court, the reason for this requirement stems from the "potential for abuse" inherent in retaliation claims and also a policy of judicial deference to the prison officials' "legitimate interest in the effective management of a detention facility." *Id.*

In *Richardson v. Wetzel*, 74 A.3d 353 (Pa. Cmwlth. 2013), this Court concluded that the prisoner failed to plead sufficient facts to demonstrate that the allegedly retaliatory action taken by the Department did not advance a legitimate penological goal. There, the Department confiscated the prisoner's letter to H&R Block on the ground that it was used to file an unlawful tax return and issued the prisoner a misconduct for the unauthorized use of mail. In his complaint, the prisoner generally asserted that the misconduct charge was false and made in retaliation for his lawful communication with H&R Block regarding a matter with the Internal Revenue Service.

On appeal, we analyzed the complaint and noted that it did not "contain any factual averments that could sustain the inference that the [Department] purposely falsified his misconduct charges." *Id.* at 358. Although the prisoner relied on a letter from the IRS to support his claim*,* this Court determined that "letter from the IRS, standing alone, does not prove that [the prisoner] engaged H&R Block for an innocuous reason, much less demonstrate that the misconduct charges were pre-

textual and retaliatory in nature, *having no rational basis in fact or law*." *Id.* (emphasis added). Further, we discounted the averment in the prisoner's complaint that he "never violated any [Department] policy or law" as a boilerplate "conclusion of law that need not be accepted as true for purposes of preliminary objections." *Id.* at 358-59. Accordingly, we concluded that the prisoner failed to demonstrate that the misconduct did not further a legitimate penological goal and affirmed the trial court's dismissal of the prisoner's complaint.

In this case, most of the allegations in Horan's complaint fare no better than those presented in the prisoner's complaint in *Richardson*. Horan's averments are replete with conclusory and bare-bones allegations that the misconducts were "retaliatory," "fabricated," and "false." (*See* Complaint, ¶¶25, 28, 32, 50.) Such averments were insufficient in *Richardson* and they are insufficient here.

The most relevant and particularized contentions in Horan's complaint pertaining to retaliation is that Defendant Wyant "lied" in her misconduct report; that he never swore at her; and that three witnesses confirmed in their proposed written statements that he did not swear at her. (Complaint, ¶¶49-50.) However, Defendant Wyandt issued Horan a misconduct for using abusive, obscene, or inappropriate language in violation of the Department's regulations, and a hearing examiner found him guilty of this misconduct based upon the statements in Defendant Wyandt's misconduct report. (Complaint, Ex. D at 5.)

In *Hartsfield v. Nichols*, 511 F.3d 826 (8th Cir. 2008), the United States Court of Appeals for the Eighth Circuit concluded that "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing some evidence the inmate actually committed a rule violation." *Id.* at 829.

9

The *Hartsfield* court explained that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation[.]" *Id.* at 831.[5]

Although the United States Court of Appeals for the Third Circuit has never accepted or rejected the *Hartsfield's* court's holding in a published opinion, *see generally Watson v. Rozum*, (3d Cir., No. 13-3510, filed August 23, 2016) (unpublished), that court has approved and applied the holding in numerous unpublished opinions, and various federal district courts within the circuit have followed suit. *See generally Mobley v. Lantz*, (M.D. Pa., 1:CV-13-1804, filed March 29, 2016) (collecting and discussing cases). Similarly, in *Hughes v. Beard*, (Pa. Cmwlth., No. 594 M.D. 2009, filed May 1, 2013), this Court applied the *Hartsfield* rationale in an unpublished memorandum to conclude that "a finding of 'some evidence' to support a prison disciplinary determination negates a prisoner's claim of retaliation." Slip op. at 22-23 (citing *Nifas v. Beard*, 374 F. App'x 241 (3d Cir. 2010) (unpublished)).

We see no reason to depart from this trend in the case law and apply the "some evidence" standard that originated in the precedent of the Eighth Circuit. This standard is particularly apt because it is consonant with the fourth prong of the *Yount* test, which requires the prisoner to prove that the misconduct does not further a legitimate penological goal, and also this Court's statement in *Richardson* that retaliation is shown when the misconduct charge has no rational basis in fact or law.

---

[5] *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("We conclude . . . that [the prisoner's] retaliation claim must fail. The prison disciplinary committee found that [the prisoner] committed an actual violation of prison rules based on [the correction officer's] description of the event. Because the finding was based on some evidence of the violation, the finding essentially checkmates his retaliation claim.").

10

The some evidence "requirement is minimal, and is satisfied if there is any evidence in the record that could support the conclusion reached by" the hearing examiner. *Deen-Mitchell v. Bledsoe*, 548 F. App'x 747, 750 (3d Cir. 2013) (unpublished). Notably, the requirement can be met by a misconduct report containing hearsay. *Ortiz v. Holt*, 390 F. App'x 150, 152 (3d Cir. 2010) (unpublished).

Here, the attachments to Horan's complaint establish that Defendant Wyandt's misconduct report constitutes "some evidence" upon which the hearing examiner found Horan guilty of violating a prison regulation pertaining to abusive language. Based upon the above case law, the statements in Defendant Wyandt's misconduct report that Horan swore at her negate Horan's retaliation claims and render them legally inoperable. Therefore, we conclude that the trial court did not err in dismissing these claims.

Constitutional Due Process

Horan argues that his constitutional due process rights were violated because he was not afforded the opportunity to present witnesses or evidence during the misconduct hearing held in connection with Defendant Wyandt's misconduct report. As a result of the misconduct, the hearing examiner disciplined Horan to thirty days of cell restriction.

Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. *See Myers v. Ridge*, 712 A.2d 791, 795 (Pa. Cmwlth. 1998). For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Lesser restraints on a prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed

11

by a court of law." *Id.* If a prisoner had no protected liberty interest in remaining free of disciplinary custody, then the state owes him no process before placing him in disciplinary confinement. In *Sandin*, the United States Supreme Court held that thirty days of disciplinary segregation for resisting a strip search did not implicate a liberty interest because "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" in that "conditions at [the prison] involve[d] significant amounts of 'lockdown time' even for inmates in the general population." *Id.* at 486.

In *Brown v. Blaine*, 833 A.2d 1166 (Pa. Cmwlth. 2003), a prisoner was found guilty of two misconduct charges – destruction of prison property and attempted escape – and was ordered to spend 120 days at the long-term segregation unit (LTSU). On appeal, this Court, relying on *Sandin*, concluded that the prisoner was not entitled to procedural due process under the constitution. We explained: "Because [the prisoner's] confinement in LTSU did not impose an 'atypical and significant hardship' on [him] in relation to ordinary prison life, [the prisoner's] transfer to the LTSU did not trigger a liberty interest and no process is due even if the transfer resulted in a less favorable living situation." *Id.* at 1172.

Pursuant to *Sandin* and *Brown*, Horan's discipline of thirty days of cell restriction did not impose an atypical and significant hardship sufficient to create a liberty interest deserving of the protections of procedural due process under the constitution. The trial court, accordingly, did not err in dismissing Horan's constitutional due process claim.[6]

---

[6] Horan further contends that, with respect to his first misconduct, his placement in the RHU amounted to an "ayptical and significant hardship" because he has severe depression and experienced suicidal ideations to such an extent that he was released from the RHU before his thirty days expired. These factual allegations, however, are irrelevant to the due process inquiry, and are **(Footnote continued on next page…)**

12

<u>37 Pa. Code §93.10</u>

In addition, Horan contends that his procedural rights vested in the regulation at 37 Pa. Code §93.10(b)(3) were violated. This provision provides, in pertinent part, that when the Department seeks to impose discipline on a prisoner, there will be an "[o]pportunity for the inmate to tell his story and to present relevant evidence." *Id.*

Importantly, the procedure embodied in 37 Pa. Code §93.10 does not implicate procedural due process for purposes of the constitution because the regulation does not create a substantive right or a protectable liberty interest. *Griffin v. Vaughn*, 112 F.3d 703, 709 n.3 (3d Cir. 1997) ("The fact that Pennsylvania regulations provide for hearings after transfer to administrative custody is not relevant to a determination of whether federal procedural due process is required. . . . The process afforded by state law is not relevant in determining whether there is a state created right that triggers due process protection."); *see Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("The courts of appeals that have confronted the issue are in agreement that the existence of a prison grievance procedure confers no liberty interest on a prisoner."). Nevertheless, this Court held in *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010), "that before prison officials can impose any sanction, they must

_____

**(continued…)**

most appropriately treated as a claim for deliberate indifference under the Eighth Amendment. In his complaint, Horan does not allege that he was denied medical or psychological treatment, and "[a] depressed mental state, without more, does not rise to the level of the 'serious or significant physical or emotional injury' that must be shown to withstand summary [dismissal] on an Eighth Amendment charge." *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999).

13

follow the procedure set forth in subsection (b) of the regulation," *id.* at 984, including the opportunity to present relevant evidence. Because the Department in *Bush* did not comply with these requirements, this Court concluded that the prisoner "has stated a cause of action for a violation of the process set forth in 37 Pa.Code §93.10," *Bush*, 1 A.3d at 985, and we reversed the trial court's grant of preliminary objections in favor of the Department.

In his complaint, Horan asserts that at the misconduct hearing for using abusive language at Defendant Wyandt, Defendant Canino, the hearing examiner, ordered a corrections officer not to retrieve the statements of his witnesses and did not consider these witnesses' statements or allow the witnesses to testify. (Complaint, ¶56.) An examination of the witness statements indicate that three prisoners observed and described Horan's interaction with Defendant Wyandt and attested that Horan did not swear at her. (Complaint, Ex. D at 2-4.) Accepting these allegations as true, as we must when reviewing preliminary objections, we conclude that the witnesses' statements appear on their face to constitute relevant and exculpatory evidence, and, absent a justifiable excuse, the hearing examiner should have received and considered them in rendering her decision. Because it is not free and clear from doubt that Horan failed to allege a violation of 37 Pa. Code §93.10(b)(3), we reverse the trial court's order to the limited extent that it dismissed Horan's claim based upon this regulation.[7]

---

[7] When provided with the opportunity, the Department Defendants, of course, can offer evidence to prove that they had adequate justification for denying Horan's request to present witnesses and/or their statements.

<u>Access to Courts</u>

Horan argues that he does not have to suffer an actual injury to state a denial of access claim against Defendant Wyandt for denying him additional time in the law library.

This Court has explained:

> Although denial of access to legal documents may constitute a violation of a prisoner's First Amendment right to petition the courts and/or Fourteenth Amendment due process rights, in order to state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an 'actual injury' to court access as a result of the denial. The Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding the sentencing or the conditions of confinement.

*Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000) (citations omitted).

Contrary to Horan's contention, to succeed on a denial of access claim, a plaintiff must show that he has suffered an actual injury; that is, the loss of a nonfrivolous legal claim, *Hackett*, 751 A.2d at 275, and must demonstrate "that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). After examining the allegations in Horan's complaint, we agree with the trial court that "[Horan] does not allege his [unrelated federal civil suit] case was dismissed or even that he missed any deadlines because of his inability to get extra time in the library." (Trial court op. at 6.) Indeed, Horan does not discuss the underlying nature of this federal civil suit in his complaint, let alone describe how he was thwarted from pursuing that claim due to lack of access to

15

the library. Accordingly, the trial court did not err in dismissing Horan's access to courts claim.[8]

Failure to Protect

Horan asserts that Defendant Newingham observed Defendant Quinones continually threaten him; that Defendants Dittsworth and Moore were informed of the situation; and that these Department Defendants failed to take action to protect him. Although Horan did not sustain any physical contact or bodily injury, he correctly points out that an inmate need not wait until an actual assault takes place to gain protection on a failure to protect theory. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

A substantial risk of serious harm is one in which the risk is "so great that it is almost certain to materialize if nothing is done." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). "Vague threats communicating a general risk of

---

[8] To the extent Horan argues in his brief that he is not pursuing an access to courts claim, but, instead, is asserting that Defendant Wyant retaliated against him for using the law library, this retaliation claim has been addressed and disposed of above.

16

violence are not sufficiently substantial under the standard." *Willie v. Pugh*, (E.D. Wis., No. 13-cv-1024-pp, filed August 16, 2016), slip op. at 6. Similarly, a prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the prisoner. *Armstrong v. Price*, 190 Fed. App'x. 350, 352-53 (5th Cir. 2006) (unpublished); *see Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) ("The facts of this case make clear our reason for requiring more than general allegations of fear . . . .").

"[I]n Pennsylvania, sufficient factual averments must be pleaded in a complaint to sustain a cause of action. Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Foster v. University of Pittsburgh Medical Center, South Side Hospital*, 2 A.3d 655, 666 (Pa. Super. 2010). "Even our present liberalized system of pleading requires that the material facts upon which a cause of action is premised be pled with sufficient specificity so as to set forth the prima facie elements of the tort or torts alleged." *Feingold v. Hill*, 521 A.2d 33, 38 (Pa. Super. 1987).

Here, in his complaint, Horan alleged that on six instances from August 13, 2013, to September 8, 2013, he "was threatened" and "again threatened" by Defendant Quinones while the two worked in the prison's food service line. (Complaint, ¶¶13-16, 18, 21.) This is the full extent to which Horan specifies the threats themselves and the circumstances surrounding the alleged threats. However, without any additional detail and context, these cursory and vague allegations of threats are insufficient to demonstrate that Horan faced a substantial risk of serious

17

harm or that any of the Department Defendants were aware of such a risk. *See also Klebanowski*, 540 F.3d at 639-40 (concluding that a prisoner failed to prove that the defendants were aware of a particular threat where the prisoner did not provide sufficient detail regarding the threat; "[w]ithout these additional facts to rely on, there was nothing leading the officers to believe that [the prisoner] himself was not speculating regarding the threat he faced[.]").[9] Therefore, the trial court properly sustained the Department Defendants' preliminary objections to Horan's claim based on a failure to protect theory.

## Conclusion

For the above-stated reasons, we conclude that the trial court erred in granting the Department Defendants' preliminary objections and dismissing Horan's

---

[9] The attachments to the complaint also include allegations, contained in grievance forms, that Defendant Quinones would engage in typical name-calling and combative argumentation with Horan and that Horan reciprocated. (Complaint, Exs. B at 2, C at 1-2.) *See Anderson v. County of La Crosse*, (W.D. Wisc., No. 08-cv-234-bbc, filed April 24, 2009), slip op. at 12 ("If jail officials separated every inmate who 'started crap' or 'talked smack' with another inmate, there would be few inmates housed outside segregation."); *Arrieta v. Bass*, (N.D. Ill., No. 09-C-8034, filed August 26, 2010), slip op. at 5 ("The mere fact that [the prisoner-plaintiff] and [the prisoner-defendant] may have argued with each other is not, alone, enough to create an objectively serious risk of harm."). To the extent that the attachments can be deemed to portray Defendant Quinones's interactions with Horan as more severe or hostile in nature, as true "threats" so to say, it was necessary for Horan to plead these particular facts and details in his complaint. *See* 4 STANDARD PENNSYLVANIA PRACTICE 2D §21:85 (2015 ed.) (stating that an attachment to the complaint "does not obviate the necessity of also including in the complaint every ingredient of a good cause of action, averred with same completeness, accuracy, and precision that are required" by the pleading rules). Horan did not do so, and he declined the opportunity to amend his complaint.

Moreover, the record indicates that Horan issued threats against Defendant Quinones, and Horan was found guilty of making such threats at a misconduct hearing. (Complaint, Ex. B at 5.) The correction officers also investigated Horan's allegations, found no evidence that Defendant Quinones made any threats toward Horan, and the staff moved Horan to a different part of the food service line. *Id.* at 2, 5, 7.

claim that he was denied the procedural rights conferred by 37 Pa. Code §93.10(b)(3). In this limited respect, we reverse the trial court's order and remand for further proceedings on this claim only. In all other respects, we affirm the trial court's order dismissing the remainder of Horan's claims.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Horan, : 
        Appellant : 
  : No. 2622 C.D. 2015
        v. : 
  : 
Chad Newingham, Wally Dittsworth, : 
Raymond Moore, Mary Lou Wyandt, : 
Robert Mackey, Mary Canino, and : 
Jose Quinones : 

## *ORDER*

AND NOW, this 24th day of October, 2016, the November 20, 2015 order of the Court of Common Pleas of Centre County (trial court) is affirmed in part and reversed in part as discussed in this memorandum opinion. The trial court's order is reversed to the limited extent that it dismissed Patrick Horan's claim that he was denied the procedural rights set forth in 37 Pa. Code §93.10(b)(3). The trial court's order is affirmed in all other respects. The case is remanded to the trial court for further proceedings regarding Horan's claim under 37 Pa. Code §93.10(b)(3).

      Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge